Tredway v. Riley.

<hr>

E. B. TREDWAY V. WILLIAM RILEY.

[FILED JULY 1; 1891.]

1. **Liquors:** SALE: CONTRACT VOID IN FOREIGN STATE: CONSTITUTIONAL LAW. Section 2360 of the Code of Iowa, prohibits the manufacture for sale or selling of intoxicating liquors within the state for any purpose except for pharmaceutical, medical, chemical, and sacramental purposes, and then only by persons holding permits from the proper authorities. The Franz Brewing Company, without such permit, manufactured and sold in that state a quantity of beer for the purpose of being transported to this state. *Held,* That the sale was in violation of said law, and that the Iowa statute does not conflict with section 8, article 1, of the federal constitution which confers upon congress the exclusive power to regulate interstate commerce.

2. ———: ———: ———: INTERSTATE COMITY. The contract, being prohibited by the laws of the state when made, is illegal and void there, and its invalidity constitutes a good defense in an action upon the contract in this state.

ERROR to the district court for Dakota county. Tried below before POWERS, J.

*Davis & Gantt,* for plaintiff in error, cited: *Niles v. Frier,* 35 Ia., 41; *Monty v. Arneson,* 25 Id., 383; *State v. Harris,* 36 Id., 137; *Wakeman v. Chambers,* 69 Id., 169; *Pearson v. Distillery,* 72 Id., 348; *Welton v. Mo.,* 91 U.

*v. Harris,* 8 Id., 142; *Wilson v. Butler,* 33 Eng. Com. S., 275; *Co. of Mobile v. Kimball,* 102 Id., 691; *Brown v. Houston,* 114 Id., 622; *Cooley v. Board,* 12 How. [U. S.], 299; *Bowman v. R. Co.,* 125 U. S., 465; *Cooper Man. Co. v. Ferguson,* 113 Id., 727; *State v. Saunders,* 19 Kan., 127; *State v. Stilsing,* 20 Atl. Rep. [N. J.], 65.

*Jay Bros.,* and *Mell C. Beck, contra,* cited: *Kanaga v. Taylor,* 7 O. St., 142; *Gassett v. Godfrey,* 26 N. H., 415; *Shelton v. Marshall,* 16 Tex., 344; *Sherlock v. Alling,* 93 U. S., 99; *Bartemeyer v. Iowa,* 18 Wall. [U. S.], 129; *Beer Co. v. Mass.,* 97 U. S., 25; *Kidd v. Pearson,* 128 Id., 1; *Pearson v. Distillery,* 72 Ia., 348.

NORVAL, J.

This action was brought in the county court of Dakota county by the plaintiff in error to recover the sum of $826.15 on an account for beer sold at Sioux City, in the state of Iowa, by the Franz Brewing Company to the defendant in error. Before suit the account was sold to the plaintiff. The petition is in the usual form.

The defendant answered:

"First—That he admits that he made a contract for the purchase of beer from the Franz Brewing Company, at the time in the said petition set forth, and that the defendant purchased beer of said brewing company at said times; but, as to the amount so purchased, he has no means of determining, and, therefore, denies that he purchased the amount in the said petition set forth.

"Second—Defendant further states, in answes to the said petition, that the contract for the purchase of the beer so sold this defendant, was made in the state of Iowa, and the beer was manufactured and sold to this defendant in the said state.

"That under the laws of the said state, in force at the time the same was sold this defendant, the sale thereof was illegal and contrary to the law, which law is as follows:

Section 2360 of the statutes of the state of Iowa, approved April, 1884, and which became a law July, 1884, provides:

" ' After this act takes effect; no person shall manufacture for sale, sell, keep for sale, give away, exchange, barter, or dispense any intoxicating liquor for any purpose whatever, otherwise than as provided in this act.

" ' Persons holding permits as herein provided, shall be authorized to sell and dispense intoxicating liquors for pharmaceutical and medical purposes, and alcohol for specified chemical purposes, and wine for sacramental purposes, but for no other purposes whatever, and all permits must be procured as hereinafter provided from the district court."

Section 2416 of the said statute provides: "Wherever the words intoxicating liquors occur in this chapter, the same shall be construed to mean alcohol, ale, wine, beer, spirituous, vinous, and malt liquors, and all intoxicating liquors whatever, and no person shall manufacture for sale, or sell, or keep for sale as a beverage, any intoxicating liquors, ale, wine, and beer."    Approved April, 1884; became a law July, 1884.

"Third—That at the time the beer was so purchased by defendant, said Franz Brewing Company had no permit to manufacture or sell intoxicating liquor as the law provided, and the said sale to this defendant as aforesaid was, by the law of the state of Iowa, then and there prohibited, and the sale of the said beer to defendant was illegal.

"Fourth—The defendant cannot be held on said account for the reasons aforesaid, and the defendant denies each and every allegation in the said petition not otherwise answered."

The plaintiff filed a reply as follows:

"1. Admits that the purchase of the beer, the subject-matter of this action, was made from the Franz Brewing Company by said defendant, and that said purchase was made in the state of Iowa.

34

"2. Plaintiff further replying to said answer, alleges that at the time of the sale aforesaid, and long previous thereto, and since said dates, the Franz Brewing Company was and is a corporation duly organized and existing under and by virtue of the laws of the state of Iowa, and was carrying on the business of manufacturing and selling beer in said state of Iowa. That the defendant, at the time of said purchase, and long previous to and since said date, was a resident of the state of Nebraska, and resided in Jackson, Dakota county, in said state, at which town said defendant was engaged in the business and occupation of keeping a saloon for the vending of retail, malt, vinous, and spirituous liquors, under and by virtue of the laws of said state of Nebraska, and at all of the hereinafter mentioned times said defendant was carrying on said business of saloon keeping, or vendor of malt, spirituous, and vinous liquors, in said town of Jackson, county and state aforesaid, under a license duly issued under and by virtue of the laws of said state of Nebraska.

"Plaintiff alleges that at the time of the sale of beer made by the Franz Brewing Company to said defendant, said Brewing Company knew that said defendant was a non-resident of the state of Iowa, and a resident of the state of Nebraska and doing business in the town of Jackson, in said state, under a license duly issued in compliance with the laws of said state, and knew that said defendant was legally and rightfully carrying on the business of a retail dealer in malt, spirituous, and vinous liquors at said place.

"Plaintiff alleges that the sale of beer made to defendant was made, as alleged, in the state of Iowa, but that the same was made for the purpose and with the intention and understanding that the same was to be shipped to said defendant at his place of business in Jackson as aforesaid, and there to be retailed by defendant in said saloon, and under and by the authority of his license to vend and re-

tail the same in said town of Jackson and state of Nebraska.

"Plaintiff alleges that in compliance with said agreement so made, said Franz Brewing Company did ship to defendant large quantities of beer, and said defendant, at various times, paid different sums of money on account of same, until said Franz Brewing Company went out of the business of manufacturing the same, at or about which time there was an account stated between defendant and the Franz Brewing Company, and there was found due said corporation as a balance on beer so sold and shipped to defendant, the sum of $826.15, as alleged in plaintiff's petition, and which sum was duly assigned to plaintiff before the commencement of this action, for a valuable consideration.

"Plaintiff further alleges that all of the beer sold to defendant was sold under said agreement that same should be retailed by said defendant in said town of Jackson, county of Dakota, and state of Nebraska, and all of the same shipped to defendant at said place, and there sold by him under and by virtue of the laws of the said state of Nebraska, and none of said beer was sold or retailed by said defendant contrary to the laws of the state of Nebraska, or that of the state of Iowa.

"Plaintiff further alleges that sales of malt, spirituous, and vinous liquors made in the state of Iowa to be used and disposed of in the state of Nebraska in accordance with the laws of said state, are legal and valid sales, and are recognized as such, and enforced by the courts of the state of Iowa."

The defendant filed a general demurrer to the reply, which was sustained by the court, and judgment was rendered dismissing the action. On error to the district court, the judgment of the county court was affirmed. The plaintiff brings the case here for review by petition in error.

It is admitted by the pleadings that the beer, for the recovery of the price of which this action was brought, was

Tredway v. Riley.

manufactured by the Franz Brewing Company, and sold and delivered to the defendant in error within the state of Iowa. It is contended that the manufacture and sale were in violation of the laws of that state, and therefore no recovery can be had in this state.

By reference to the sections of the statute of the state of Iowa, in force at the time the beer in question was sold, which are copied into the answer, we find that the manufacture and sale of all intoxicating liquors within the state of Iowa is expressly prohibited, except for pharmaceutical, medical, chemical, or sacramental purposes. And it can only be legally manufactured or sold for the four specified purposes by persons holding permits issued by the proper authority. It is alleged in the answer, and not denied by the reply, that at the time the beer was purchased the Franz Brewing Company had no permit to manufacture or sell intoxicating liquors. Moreover, it appears from the allegations of the reply that the beer in question was sold in Iowa for none of the purposes expressly permitted or authorized by the laws of that state. The sale was therefore illegal, unless, as is claimed by counsel for the plaintiff, the manufacture and sale of intoxicating liquors within that state, for the sole purpose of transportation and sale out of that state, infringes no law or statute of the state of Iowa. It will be observed that none of the sections of the code of that state, pleaded in the answer, contain any provision which can be construed to exempt from their operations, intoxicating liquors manufactured or sold in that state, with the intent and for the purpose of being transported to another state to be there sold. The statute in express terms forbids all sales within the state, of intoxicating liquors manufactured there, except for the four purposes already mentioned. Liquors sold there by a person not holding a permit, to be transported to another state, are within the scope of the law.

It is contended by counsel for the plaintiff, if the stat-

ute receives the construction which we have given it, then
the law conflicts with section 8, article 1, of the constitu-
tion of the United States by undertaking to regulate com-
merce between the states.   The section provides that "Con-
gress shall have the power to regulate commerce with
foreign nations, and among the several states," etc.

Laws regulating and prohibiting the manufacture and
sale of intoxicating liquors are regarded as police regula-
tions, passed for the prevention of idleness, drunkenness,
pauperism, and crime.   While such laws affect commerce,
they have not been regarded as a regulation of commerce,
within the meaning of the constitutional provisions quoted
above.   So under the police powers, states have passed
quarantine and health laws, and laws preventing the im-
portation into a state of diseased cattle, and the sale of
unwholesome food.   While such laws, to some extent, reg-
ulate commerce between foreign countries and between the
states, they are not for that reason invalid.   As was ob-
served by Mr. Justice McLean in the *License Cases*, 5
How. [U. S.], 589 : "The acknowledged police power of
a state extends often to the destruction of property.   A
nuisance may be abated.   Everything prejudicial to the
health and morals of a city may be removed.  Merchan-
dise from a port where a contagious disease prevails, being
liable to communicate the disease, may be excluded, and in
extreme cases, it may be thrown into the sea.   This comes
in direct conflict with the regulation of commerce, and yet
no one doubts the local power.   It is a power essential to
self preservation, and exists, necessarily, in every organized
community.   It is, indeed, the law of nature, and is pos-
sessed of man in his individual capacity.   *   *   *   From
the explosive nature of gunpowder, a city may exclude it.
Now this is an article of commerce, and is not known to
carry infectious diseases; yet, to guard against a contin-
gent injury, a city may prohibit its introduction.   These
exceptions are always implied in commercial regulations,

where the general government is admitted to have the exclusive power. They are not regulations of commerce, but acts of self-preservation. And, although they affect commerce to some extent, yet such effect is the result of the exercise of an undoubted power in the state."

Although a state has the power to regulate or prohibit the sale of intoxicating liquors within its borders, it cannot restrict their importation into or through the state, nor their exportation out of the state, nor prohibit the sale of imported liquors in the original packages, or vessels in which they were shipped. That would clearly be the regulation of commerce proper, which power is conferred exclusively upon congress. Nor can a state, under the guise of police powers, regulate interstate commerce. The Iowa statute does not undertake to prevent the transportation of intoxicating liquors from that to any other state, nor to prohibit their sale out of the state. It only restricts their manufacture and sale within the state of Iowa. The sale of the liquors were not forbidden by reason of their transportation or intended transportation, but the same restriction is placed by the legislature upon the sale of all liquors within the state. No regulation of commerce between the states is attempted. The liquors were manufactured in Iowa, and at the time of their sale were not in process of transportation to this or any other state. They had not yet become interstate commerce. Had such been the case, the state would have been powerless to have forbidden their sale while in the original packages. The fact that it was the intention of the defendant to ship the liquors to this state is quite immaterial. Such intention and purpose could not alone have the effect to make the liquors interstate commerce. They did not become such until received by the carrier for shipment. Until then they were under state jurisdiction and control. The supreme court of the United States, in the case of *The Daniel Ball*, 10 Wall., 565, properly said: "Whenever a com-

modity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced."

The same doctrine was affirmed by the same court in the later case of *Coe v. The Town of Errol*, 116 U. S., 517. In that case the authorities of the state of New Hampshire assessed for taxation certain logs which had been cut in that state and hauled to the town of Errol in the same state, for the purpose of transportation to the state of Maine. The logs were held at Errol by the owner for a convenient opportunity for shipment. The court, in an exhaustive opinion by Mr. Justice Bradley, held the tax valid. We quote from the opinion:

" Does the owner's state of mind in relation to the goods—that is, his intent to export them, and his partial preparation to do so—exempt them from taxation? This is the precise question for solution. This question does not present the predicament of goods in course of transportation through a state, although detained for a time within the state by low water or other causes of delay, as was the case of the logs cut in the state of Maine, the tax on which was abated by the supreme court of New Hampshire. Such goods are already in the course of commercial transportation, and are clearly under the protection of the constitution. And so, we think, would the goods in question be when actually started in the course of transportation to another state, or delivered to a carrier for such transportation. There must be a point of time when they cease to be governed exclusively by the domestic law, and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement for transportation from the state of their origin to that of their destination. When the products of the farm or forest are collected and brought in from the surrounding country to a town or station, serving as an *entrepot* for that particular region, whether on a

river or a line of railroad, such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the state to the state of their destination, or have started on their ultimate passage to that state. Until then it is reasonable to regard them as not only within the state of their origin, but as a part of the general mass of property of that state, subject to its jurisdiction and liable to taxation there, if not taxed by reason of their being intended for exportation, but taxed without any discrimination in the usual way and manner in which such property is taxed in the state. * * * Though intended for exportation, they may never be exported; the owner has a perfect right to change his mind; and until actually put in motion, for some place out of the state, or committed to the custody of a carrier for transportation to such place, why may they not be regarded as still remaining a part of the general mass of property in the state? If assessed in an exceptional time or manner, because of their anticipated departure, they might well be considered as taxed by reason of their exportation or intended exportation; but if assessed in the usual way, when not under motion or shipment, we do not see why the assessment may not be valid and binding."

It logically follows from the reasoning of the court in the foregoing case, that the liquors in controversy were not interstate commerce when sold, and are subject to the police powers of the state.

Counsel in the brief of plaintiff in error say: "The defendant was violating no law of Nebraska in going to Iowa and making this contract, and the corporation was violating no law of Nebraska in selling this beer to be used there." This is true, but the invalidity of the sale is placed upon the ground that the brewing company violated the laws of Iowa, and not of Nebraska, in making the sale. The sale in law and in fact was made in Iowa,

notwithstanding it was purchased for the purpose of transportation out of the state.   These liquors were manufactured in violation of the law of Iowa, and having no lawful existence how can it be said that they were the subject of lawful commerce?

The decisions cited by plaintiff in error are not analogous to the case before us, as a cursory examination will show.

In *Bowman v. Chicago & N. W. R. Co.*, 125 U. S., 465, the only question before the court was the validity of a statute of Iowa prohibiting common carriers from bringing intoxicating liquors into the state from another state, without first procuring a certificate from a public officer of Iowa, to the effect that the person to whom the liquors are consigned had authority under the laws of that state to sell the same.   The court held the prohibition of the transportation of liquors from another state, under the restrictions imposed by the statute, was not the exercise of the police power of the state, but was the regulation of interstate commerce, and was, therefore, in violation of the constitution of the United States.   It is manifest that the statute considered by the court in that case attempted to regulate commerce between the state of Iowa and the other states.   The statute we are considering in this case is not of that character.   It only attempts to regulate commerce within the state.

The constitution of Colorado, and a statute passed by the legislature of that state, prohibits a foreign corporation from transacting business in Colorado, until it has filed a certificate signed and acknowledged by its president and secretary, designating its principal place of business, and appointing an agent on whom service of summons could be made.   A corporation of Ohio, without filing such certificate, made a contract in Colorado with a citizen of that state to manufacture and deliver some farm machinery.   The goods were made and delivered, and in a

suit brought by the corporation for a breach of the contract, the defendant pleaded as a defense, the failure of the plaintiff to comply with the provisions of the constitution and statute. In *Cooper Mfg. Co. v. Ferguson*, 113 U. S., 727, the court held that the state of Colorado could not prohibit the plaintiff from selling in that state, by contract made there, its machinery manufactured in another state, on the ground that it was a regulation of interstate commerce.

In *Leisy v. Hardin*, 135 U. S., 100, it was held that the citizen of one state has the right to import beer into another state and sell it there in its original packages; that until sold by the importer it is not subject to state regulations, and that a state law which forbids the sale of an imported article by the importer, in unbroken packages, is a regulation of commerce between the states and void. The theory of that decision is, that commerce between the states does not cease until the imported article is mingled with, and becomes a part of, the general property of the state, by sale at the place where the transportation terminates. The courts do not undertake to state at what point of time an article becomes interstate commerce, as does *Coe v. Town of Errol, supra*.

The cases most nearly in point are *Pearson et al. v. International Distillery Co. et al.*, 72 Ia., 348, and *Kidd v. Pearson*, 128 U. S., 1, cited in the brief of the defendant. In the Iowa case the action was brought to abate, as a nuisance, a distillery located in that state, used for the unlawful manufacture and sale of intoxicating liquors, and to enjoin the owner from their manufacture and sale. It appears that the liquors were manufactured solely for the purpose of transportation and sale out of the state, and no sales were made, or intended to be made, within the state. The action was sustained. The court in the syllabus say:

" 1st. The manufacture for sale of intoxicating liquors as beverages is prohibited within the state of Iowa by code,

section 1523; notwithstanding that the liquor was manufactured only for exportation, and was not sold or intended to be sold within the state.

"2d. The only intoxicating liquors which may be manufactured, sold, or kept for sale within the state of Iowa are those manufactured in the state for mechanical, medicinal, culinary, or sacramental purposes, or imported for sale under the authority of the laws of the United States, and remaining in the original packages and quantities in which they were imported.

"3d. The Iowa statute prohibiting the manufacture or sale of intoxicating liquors, even for exportation, unless manufactured within the state for mechanical, medicinal, culinary, or sacramental purposes, and prohibiting also the sale of imported foreign intoxicating liquor, unless in its original packages and quantities, is not in conflict with the exclusive right of congress to regulate interstate commerce, and is therefore constitutional."

The case was taken on error to the supreme court of the United States, where, in *Kidd v. Pearson, supra,* the judgment of the state court was affirmed. The conclusion we have reached is that the manufacture and sale of the beer in question were prohibited by the Code of Iowa. The contract and sale being illegal and void when made, such invalidity is a complete defense in an action upon a contract here. That the law of a place where a contract is made governs as to the right of action is too well settled to require the citation of authorities. The judgment is

AFFIRMED.

THE other judges concur.