ARCHER-DANIELS-MIDLAND COMPANY, APPELLANT, v. BOARD OF EQUALIZATION OF DOUGLAS COUNTY, NEBRASKA, APPELLEE.

46 N. W. 2d 171

Filed February 13, 1951. No. 32847.

*Abrahams, Kaslow & Carnazzo,* for appellant.

*James J. Fitzgerald* and *Henry C. Winters,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an appeal by Archer-Daniels-Midland Company, plaintiff and appellant, from a decree of the district court affirming a valuation fixed by the board of equalization of Douglas County, Nebraska, upon the tangible property of the plaintiff. The board of equalization is defendant and appellee.

The factual background is that the plaintiff is a Delaware corporation with a place of business in the city of Omaha, Nebraska. It is engaged in the business of a grain broker. For the year 1949 it filed a personal property tax schedule wherein is listed certain intangible property, and tangible property consisting of office fixtures valued at $550. The county assessor increased

the valuation of tangible property to $28,330. The plaintiff filed a complaint with the board of equalization protesting the increase and requesting that the valuation be fixed by the board at $550. The board fixed the valuation at $14,480.

From the action of the board plaintiff appealed to the district court where, after trial, the district court affirmed the action of the board. From this action of the court the plaintiff has appealed.

The assignments of error are that the findings and judgment are contrary to law and contrary to and not sustained by the evidence, and that the court erred in overruling the motion for new trial.

From the face of the transcript it appears simply that the increase in valuation made by the county assessor and also the increase by the board of equalization contemplated a value of tangible personal property in the county above the valuation of $550 contained in the return of the plaintiff. However, from an examination of the pleadings and proceedings in the district court together with the transcript from the board of equalization it is apparent that neither before the board of equalization nor in the district court was it so considered but on the contrary it represented the average amount of the total investment in the business of the plaintiff as a grain broker. The parties tried the matter in the district court on this theory without objection on behalf of either party. While the defendant adduced no evidence the stipulations of the parties entered into coupled with the evidence adduced by the plaintiff make it clear that this is the theory on which the matter was considered by the parties from beginning to end.

Section 77-1222, R. R. S. 1943, separately classifies grain brokers for taxation. There is no question but that the plaintiff is a grain broker. Hence there is no necessity for the definition of a grain broker here.

The method for assessment of the class is provided by section 77-1223, R. R. S. 1943, as follows: "Every per-

son engaged in any business defined in section 77-1222 shall, in the taxing district where the principal office or place of business is located, list and return the average amount of capital invested in such business in excess of real estate and other tangible property separately assessed, for the preceding year."

Section 77-1224 provides: "The assessor shall determine the average amount of the total investment in the business, and the amount, if any, by which the average total investment exceeds the value of the real estate and tangible property separately assessed. * * * The excess, if any, of the average total investment shall be separately listed and shall be taxed at the same rate as the tangible property and this tax shall be in lieu of all other taxes thereon."

The substantial contention of the plaintiff is that it is not subject to taxation on the difference between the $550 reported in the return and $14,480 for the reason that it had no capital invested in its business within the meaning of sections 77-1223 and 77-1224, R. R. S. 1943.

It did however by stipulation agree in substance that through its office in Omaha, Nebraska, it had invested capital the fair average of which was $14,480. The stipulation is as follows: "It is stipulated that, subject to the ruling of the Court on the matters of law involving the situs and related matters, that the valuation placed by the Board of Equalization on, the over-all capital invested at $14,480 is a fair and just assessment."

The theory of its contention is that it had no capital invested within and subject to the taxing jurisdiction of the state, that is that no grain in which it had capital invested ever had a situs for taxing purposes within the state, and therefore the action of the board of equalization was unconstitutional and void.

Plaintiff urges in its brief that all grain purchased in the state was in transit to a point beyond the state, that other grain was purchased through the Omaha

office which never at any time entered the state, and hence none of its invested capital was subject to taxation under the statute mentioned.

As we interpret the pleadings, the briefs, and the decree of the district court the issues considered and determined were: First, whether or not the classification and method of assessment for taxing purposes provided in sections 77-1222, 77-1223, and 77-1224, R. R. S. 1943, were a valid and constitutional exercise of legislative power; and second, if this is a valid and constitutional exercise of legislative power then whether or not the assessment against the investment contemplated by the board of equalization was a valid exercise of power under this classification and method of assessment.

The question of whether or not the record contains sufficient facts upon which to base a determination of these issues is in doubt. However since there is some evidence to support a determination, and the briefs have presented these issues, and the district court made its determination thereon we will assume the sufficiency of the facts and make a determination accordingly.

The constitutionality of these provisions of the statute within the purview indicated will be considered first. One of the phases within this purview has already received the attention of this court. It has been held that this statute which empowers the taxing authorities to assess for taxing purposes the average investment of a grain broker in grain where the investment was in the State of Nebraska is a valid and constitutional exercise of legislative power.

This court in Central Granaries Co. v. Lancaster County, 77 Neb. 319, 113 N. W. 199, after pointing out factually that it was investment in grain in the State of Nebraska that was involved in this case, in upholding the constitutionality of this legislation said: "If the legislature has power to 'require the assessment of average capital' instead of the assessment of the property owned at some specified time, and if there is a special

and sufficient reason for using this method in assessing those engaged in buying and selling grain for profit, a reason that does not apply to assessment in general, then there can be no doubt of the power of the legislature to so classify such interests for assessment."

In the syllabus it was said: "The classification (laws 1903, ch. 73, sec. 66) of 'every person, company or corporation engaged in the business of buying and selling grain for profit' as a 'grain broker,' for purposes of assessment, and providing for the assessment of the average capital of grain brokers, is not unconstitutional."

This case was before this court on hearing and twice on motion for rehearing. On the first appearance the legislation was held unconstitutional. On the second it was held constitutional as above indicated. On the third a rehearing was denied. The first opinion is reported as 77 Neb. 311, 109 N. W. 385, and the third as 77 Neb. 327, 113 N. W. 543.

The determination made at that time has not been disturbed by any later decision of this court. We think the reasons set forth therein are sound and that the conclusions therein should be adhered to in this case.

In this case a part of the investment was in grain purchased in Nebraska and a part in grain which never at any time came into the state. Apparently about 70 percent was used for purchase of grain in Nebraska and about 30 percent outside.

The appellee contends and the district court held effectually that the statute was constitutional and that under it the assessing authorities could properly assess on the basis of investment in grain through the Omaha office of the appellant whether the investment be in grain in the State of Nebraska or without.

Whether or not the Legislature intended this statute to apply to investment in grain outside the state as well as within is not ascertainable from the language of the statute itself. If that was the intention we are of the opinion that to the extent that it seeks to permit the

assessment of investment outside the state it is unconstitutional and void.

The parties agree that the tax contemplated by the statute is an ad valorem property tax. The statute and the interpretation of it contained in Central Granaries Co. v. Lancaster County, *supra,* make clear that the design of it is to provide a particular method for assessing tangible property having a taxable situs in the State of Nebraska.

The grain in which investment was made outside the state and which thereafter never came into the state of course never had a taxable situs within the state. It appears reasonable therefore to say that the investment which was the representative and substitute for the grain could not be said to have a taxable situs in the state. The investment was no more in the state than was the grain in which it was invested. The investment insofar as the State of Nebraska is concerned was nothing more nor less than a bookkeeping entry on the books of the appellant.

The reasoning of the following cases supports this conclusion: Bank of Commerce v. New York City, 2 Black 620, 17 L. Ed. 451; Bank Tax Case, 2 Wall. 200, 17 L. Ed. 793; Farmers & Mechanics Sav. Bank v. Minnesota, 232 U. S. 516, 34 S. Ct. 354, 58 L. Ed. 706; New Jersey R. T. Ins. Co. v. Division of Tax Appeals, 338 U. S. 665, 70 S. Ct. 413, 94 L. Ed. 439; Delaware, L., & W. R. R. Co. v. Pennsylvania, 198 U. S. 341, 25 S. Ct. 669, 49 L. Ed. 1077.

The authorities hold that tangible personal property is not subject to an ad valorem tax in a taxing jurisdiction unless such property has acquired a situs in such jurisdiction. Hays v. The Pacific Mail Steamship Co., 17 How. 596, 15 L. Ed. 254; Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. Ed. 150; Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143; 51 Am. Jur., Taxation, § 453, p. 468, and § 860, p. 767; Annotation, 110 A. L. R. 707.

The plaintiff on another theory contends that the investment in grain purchased in Nebraska was not subject to taxation under this statute, or in fact under any other statute or recognized principle of law. The theory is that all grain purchased in Nebraska was in transit in interstate commerce at the time of purchase and it so continued after purchase until it arrived in Council Bluffs, Iowa, and thus being at all times in transit in interstate commerce while in Nebraska it could not have and did not acquire a taxable situs in this state.

The evidence is none too clear on the question of whether or not this grain was at all times in transit in interstate commerce but because of the theory on which the case was apparently presented and clearly considered by the district court and because of the character of the presentation by the briefs here we will assume that it was sufficient to show that it was so in transit.

So assuming, it becomes necessary to say that this portion of the investment was not subject to taxation in this state.

It is well settled that property in interstate commerce through a state and which comes into a state only as an incident to its transfer to some other state acquires no situs for taxation and is not taxable in such state. This rule applies as well to property purchased in transit within the state which does not thereafter lose its character as property in transit in interstate commerce until it reaches a destination outside the state. Kelley v. Rhoads, 188 U. S. 1, 23 S. Ct. 259, 47 Ed. 359; Champlain Realty Co. v. Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195; Annotation, 25 A. L. R. 1201; 51 Am. Jur., Taxation, § 455, p. 469; 2 Cooley, Taxation (4th ed.), § 452, p. 982.

We conclude therefore, it appearing that the investment in grain purchased in Nebraska was grain in transit in interstate commerce, that the assessment thereon by the appellee was void.

The contention that the cause was presented to the

district court on issues different from those presented to the board of equalization may not be considered here. The record does not disclose that any such objection was made to the district court and exception thereto preserved. Stitcher v. Cox, 52 Neb. 532, 72 N. W. 848.

The decree of the district court is reversed and remanded with directions to enter a decree in favor of the appellant in accordance with the conclusions arrived at herein.

REVERSED AND REMANDED WITH DIRECTIONS.