ARCHER-DANIELS-MIDLAND COMPANY, APPELLANT, v. BOARD OF EQUALIZATION OF DOUGLAS COUNTY, APPELLEE.

48 N. W. 2d 756

Filed July 16, 1951. No. 32847.

*Abrahams, Kaslow & Carnazzo,* for appellant.

*James J. Fitzgerald, Henry C. Winters,* and *Eugene F. Fitzgerald,* for appellee.

*Van Pelt, Marti & O'Gara, Warren K. Dalton,* and *Robert D. McNutt,* amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This action was before us and decision rendered in 153 Neb. 776, 46 N. W. 2d 171. Motion for rehearing was filed challenging our opinion on two grounds: First, that we assumed the evidence established that the grain was in interstate commerce and urging that the clear and convincing proof required was not in the record and our conclusion was erroneous. Novak v. Board of Equalization, 145 Neb. 664, 17 N. W. 2d 882. The second contention was that the questions presented and determined were not in issue before the defendant and hence could

not be considered in the district court or here. We granted reargument.

Amicus curiae filed a brief contending that the constitutionality of our statutes involved here was not an issue and hence that question should not be decided unless necessary. Defendant, by brief, agrees with this contention.

The questions presented on reargument can better be answered by setting aside our former opinion and restating the facts and issues and our determination thereon. Accordingly our former opinion is set aside. We, however, reach the same result in so doing.

The Archer-Daniels-Midland Company for convenience will be hereinafter referred to as the plaintiff and the Board of Equalization of Douglas County as the defendant.

Plaintiff is a corporation organized under the laws of Delaware. Its principal place of business is at Minneapolis. It has a branch office at Omaha. So far as this litigation is concerned, its business is buying, selling, storing, and cleaning grain. It buys in carload lots for cash. It has neither terminal, storage, nor country elevators in Nebraska. It has no storage facilities of any kind in Nebraska. It has had no grain stored in Nebraska. It has a terminal elevator in Council Bluffs, Iowa, where grain is received that has been shipped there from country elevators. It purchases grain either on the floor of the Omaha Grain Exchange or direct from elevators. The physical location of the grain when purchased could be in Omaha or in or out of Nebraska, "* * * most anyplace, depending upon whether we purchase it to arrive or after it arrived here." Plaintiff paid for the grain out of moneys on deposit in an Omaha bank.

Plaintiff made out and filed a schedule of its property for the year 1949 with the county assessor of Douglas County. It there reported office fixtures, "Actual Value," $550. The county assessor raised the tangible

value total to $28,330. The basis of this increase is not shown. Plaintiff filed complaint with the defendant reciting that it had filed a schedule of tangible personal property having a total valuation of $550; that it was raised by the county assessor "without any basis therefor" to a total valuation of $28,330 for the year 1949; and that it was assessed too high. It asked that the assessment be reviewed, corrected, and reduced to $550.

The defendant referred the complaint "for inspection." The inspector requested information and plaintiff supplied the information that its purchases of grain for the twelve months ending February 28, 1949, amounted to $7,263,417.35. The inspector reported to the defendant that on the basis of information received from plaintiff "* * * the amount invested in grain is $19,899.77, seventy per cent of which is $13,930.00 and accordingly the personal property schedule should be increased $13,-930.00 making the total tangible property $14,480.00." The defendant, after that report was received, adopted a motion fixing the tangible value at $14,480. From that action the plaintiff appealed to the district court.

It was stipulated at the trial in the district court that 75 percent of the $7,263,417.35 represented grain purchased out of the Omaha office, and that $14,480 was a fair and just assessment in the event it was found that the grain belonging to plaintiff and located at its elevator in Council Bluffs was subject to tax in Nebraska.

In its petition on appeal plaintiff recited these procedural steps and alleged that the office fixtures were its only tangible property subject to taxation in Douglas County; that the increase was based solely on and represented grain stored in Council Bluffs, Iowa; that the defendant proceeded on the theory that the grain constituted part of plaintiff's invested capital and was taxable under sections 77-1222 to 77-1224, R. R. S. 1943; that it was not so taxable; and that the assessment in excess of the sum of $550 constituted an arbitrary classification and discrimination against the plaintiff and was

unconstitutional and void under provisions of both the federal and state constitutions. Plaintiff prayed that the assessment be reduced to $550 and that there be entered the required orders to make the reduced assessment effective.

Defendant filed a general denial.

Plaintiff produced the testimony of its office manager and certain exhibits. Defendant offered no witnesses or evidence. The trial court found generally for the defendant and against the plaintiff, confirmed the action of defendant, and dismissed plaintiff's petition. The trial court proceeded, as its decree indicates, on the theory that it was immaterial where the grain covered by plaintiff's average investment chanced·to be, and that defendant was not assessing the grain but rather the average invested capital used by the plaintiff in its Nebraska business.

Plaintiff appeals and presents here three contentions: (1) The tax involved here is an ad valorem property tax; (2) the plaintiff's grain at no time had a taxable situs in Nebraska; and (3) an ad valorem property tax upon a grain broker's investment in grain is in substance and effect a tax upon the grain itself and that the state is without constitutional power to tax the grain and hence a property tax upon capital invested in the grain is beyond the state's constitutional powers.

Defendant here conceded as to (1) that the tax is an ad valorem property tax; as to (2) defendant denies that plaintiff's grain at no time had a taxable situs in Nebraska, or "at least" plaintiff had not proved that fact; and as to (3) defendant denies that a property tax on the investment in grain is necessarily a tax on the grain itself. So our inquiry here is limited to the second and third contentions of plaintiff.

Defendant presents here the contention that the plaintiff did not raise these questions before the county board of equalization and that, therefore, the district court was without jurisdiction to hear and determine them

and accordingly they may not be determined here. Defendant relies on Reichenbach Land & Loan Co. v. Butler County, 105 Neb. 209, 179 N. W. 1015.

The statute there involved was section 77-1511, R. R. S. 1943, which provides: "The district court shall hear appeals taken under section 77-1510 as in equity and without a jury, and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof, and any decision rendered therein shall be certified by the clerk of the court to the county clerk, who shall correct the assessment books in his office accordingly."

In the Reichenbach case the complaint before the board was that the assessment was "too high." It was asserted that the shares of stock involved were assessable. In the district court it was not shown that the assessment was too high but it was pleaded and contended that the shares were not assessable. It was held that the question for review by the board should have been pointed out in some form and that on appeal the district court was limited to the questions presented to the county board of equalization.

Here the plaintiff complained to the defendant that its property was assessed "too high," not because of a miscalculation of values, but because the amount shown on the schedule was raised by the assessor "without any basis therefor." It appears clearly that the validity of the assessment involved in the amount in excess of $550 was the issue before the defendant, the district court, and here. We see no merit in this contention.

The next question is, did the grain of plaintiff have a taxable situs in this state? In our former opinion we expressed some doubt on that matter. On reconsideration that doubt is removed. We have hereinbefore summarized the evidence. The evidence here does not have the pointed precision of proof that eliminates all other possibilities.

The rule is: "Where defendant does not adduce any proof, all facts which the evidence on behalf of plaintiff tends to prove will be treated as established for the purposes of a prima facie case in plaintiff's favor." Thamann v. Merritt, 107 Neb. 602, 186 N. W. 1003.

However, the evidence is held sufficient to establish that all the grain purchased by plaintiff through its Omaha office was either never in Nebraska or, if in Nebraska, was at all times in transit in interstate commerce so far as plaintiff's ownership is concerned.

This brings us to the question of the validity of the assessment.

Section 77-1223, R. R. S. 1943, requires that the plaintiff "* * * list and return the average amount of capital invested in such business in excess of real estate and other tangible property separately assessed, for the preceding year."

Section 77-1224, R. R. S. 1943, requires that the assessor determine the average amount of the total investment in the business, and the amount, if any, by which the average total investment exceeds the value of the real estate and tangible property separately assessed. In determining the excess of the total investment, he shall take into consideration the purchases and sales during the year. The excess, if any, of the average total investment shall be separately listed and shall be taxed.

We determined the remaining questions in this appeal in our former opinion by holding that "The grain in which investment was made outside the state and which thereafter never came into the state of course never had a taxable situs within the state. It appears reasonable therefore to say that the investment which was the representative and substitute for the grain could not be said to have a taxable situs in the state. The investment was no more in the state than was the grain in which it was invested. The investment insofar as the State of Nebraska is concerned was nothing more nor

less than a bookkeeping entry on the books of the appellant.

"The reasoning of the following cases supports this conclusion: Bank of Commerce v. New York City, 2 Black 620, 17 L. Ed. 451; Bank Tax Case, 2 Wall. 200, 17 L. Ed. 793; Farmers & Mechanics Sav. Bank v. Minnesota, 232 U. S. 516, 34 S. Ct. 354, 58 L. Ed. 706; New Jersey R. T. Ins. Co. v. Division of Tax Appeals, 338 U. S. 665, 70 S. Ct. 413, 94 L. Ed. 439; Delaware, L., & W. R. R. Co. v. Pennsylvania, 198 U. S. 341, 25 S. Ct. 669, 49 L. Ed. 1077.

"The authorities hold that tangible personal property is not subject to an ad valorem tax in a taxing jurisdiction unless such property has acquired a situs in such jurisdiction. Hays v. The Pacific Mail Steamship Co., 17 How. 596, 15 L. Ed. 254; Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. Ed. 150; Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143; 51 Am. Jur., Taxation, § 453, p. 468, and § 860, p. 767; Annotation, 110 A. L. R. 707. * * *

"It is well settled that property in interstate commerce through a state and which comes into a state only as an incident to its transfer to some other state acquires no situs for taxation and is not taxable in such state. This rule applies as well to property purchased in transit within the state which does not thereafter lose its character as property in transit in interstate commerce until it reaches a destination outside the state. Kelley v. Rhoads, 188 U. S. 1, 23 S. Ct. 259, 47 L. Ed. 359. Champlain Realty Co. v. Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195; Annotation, 25 A. L. R. 1201; 51 Am. Jur., Taxation, § 455, p. 469; 2 Cooley, Taxation (4th ed.), § 452, p. 982." Archer-Daniels-Midland Co. v. Board of Equalization, *supra*.

Based upon these conclusions we held that the assessment here involved was void.

We stated the rules as applied to the statutes here involved as follows:

"An investment in grain which grain never entered the State of Nebraska is not taxable under sections 77-1222, 77-1223, and 77-1224, R. R. S. 1943.

"Neither tangible personal property nor the investment of a grain broker in grain which has not acquired a situs in this state is subject to an ad valorem tax under sections 77-1222, 77-1223, and 77-1224, R. R. S. 1943.

"Property in transit in interstate commerce through this state only as an incident to its transfer to some other state acquires no situs for taxation and is not taxable in this state.

"Property purchased in transit within this state which does not thereafter lose its character as property in transit in interstate commerce until it reaches its destination outside the state is not taxable under sections 77-1222, 77-1223, and 77-1224, R. R. S. 1943." Archer-Daniels-Midland Co. v. Board of Equalization, *supra.*

These holdings are not questioned in the motion for rehearing. We adhere thereto.

The decree of the district court is reversed and the cause remanded with directions to enter a decree in favor of the plaintiff in accord with the conclusions arrived at herein.

REVERSED AND REMANDED WITH DIRECTIONS.

YEAGER, J., concurs in the result.