IN RE REVIEW OF THE ASSESSMENT OF PERSONAL PROPERTY OF T. W. JONES GRAIN CO. STATE OF NEBRASKA, APPELLANT, v. T. W. JONES GRAIN CO., APPELLEE.

58 N. W. 2d 212

Filed April 24, 1953. No. 33286.

*Clarence S. Beck,* Attorney General, and *Dean G. Kratz,* for appellant.

*Charles M. Bosley,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This appeal contests the accuracy of the judgment of the district court approving the return of personal property for taxation made in 1951 by appellee.

Appellee was engaged in buying and selling grain for profit. Its place of business was in Trenton and it owned and operated a grain elevator. Appellee had in the elevator about 20,000 bushels of wheat on February 2, 1951, and it on that date by contract in writing obligated itself to sell to Klecan Grain Company, Kansas City, Missouri, 10 capacity boxcars of No. 1 hard wheat of stated grades and specified prices to be delivered within 60 days to the purchaser f. o. b. at Kansas City, Missouri. The contract contained these conditions: That the cars should be loaded to the capacity required by the railroad; that delivery of the grain in satisfaction of the contract would not be complete until it reached destination and was inspected and weighed at the expense of the seller; and that if the grain shipped did not comply with the terms of the contract it would be, if fit for use, applied on the contract at the market difference on the day of inspection, but if unfit for use it would be sold for the account of the shipper and no credit would be given for it on the contract.

Appellee during the period from the date of the contract to and including March 6, 1951, shipped to the purchaser 5 cars of the wheat in the elevator when the contract was made. The balance of the wheat, the exact amount of which cannot be ascertained from the record but is referred to therein as "about" or "approximately" 10,000 bushels, was in the elevator in Trenton on March 10, 1951, the tax date. § 77-1201, R. R. S. 1943. The seller had not been able to secure railroad cars in which to transport it to the purchaser though he had made all

possible efforts to do so. This wheat was shipped to the purchaser in Kansas City commencing on March 12, and ending on March 22, 1951. The grain tendered by appellee to the purchaser in fulfillment of the contract complied with the requirements of it and was accepted by the purchaser with that effect.

The wheat in the elevator on March 10, 1951, and thereafter delivered to the purchaser was not included in the 1951 amended personal property schedule made by appellee.

Appellee at the time important to this controversy was a grain broker. § 77-1222, R. R. S. 1943. The law contemplates that all property in the state of every nature, not expressly exempt therefrom, shall be in some manner valued for taxation and be required to bear its share of the public burden. Art. VIII, § 1, Constitution of Nebraska; § 77-201, R. R. S. 1943. This requires that the tangible property of a grain broker be returned for taxation and that it be assessed in precisely the same manner as like property employed in other ways is returned and taxed. In addition thereto a grain broker is required to "list and return the average amount of capital invested in such business in excess of real estate and other tangible property separately assessed, for the preceding year." § 77-1223, R. R. S. 1943. The words "real estate and other tangible property" as used in the statute obviously mean all other tangible property including real estate. Any excess of the average total investment is required to be separately listed and taxed at the same rate as the tangible property. § 77-1224, R. R. S. 1943.

Central Granaries Co. v. Lancaster County, 77 Neb. 319, 113 N. W. 199, on rehearing 77 Neb. 327, 113 N. W. 543, determined a situation in which a grain broker omitted from its statement of property for taxation $10,000 worth of grain in its elevator. The assessor added the grain to the schedule of the owner and his action was the subject of the contest. The court in deciding that the grain was required to be returned for

taxation said: "If this is the true interpretation of the statute, then the assessor should value for taxation all of the property of the person, company or corporation engaged in the buying and selling of grain for profit, including real estate and grain on hand, and should then ascertain, in the manner that the statute points out, whether the average capital invested in the business during the preceding tax year was greater than the capital which he has so assessed, and, if he finds that it was greater, then he should add to his assessment such excess of the average capital invested. In this case the plaintiff omitted from its statement of property for taxation the amount of its grain on hand, and the assessor properly added this amount to the assessment. By its judgment the district court approved of this action on the part of the assessor and was right in so doing." See, also, Richards v. Harlan County, 79 Neb. 665, 113 N. W. 194.

The fact that appellee attempted to determine the average amount of its total investment in the grain business for the preceding year; that by the method used it was found that it was in excess of the value of the tangible property of the business; and that the excess so arrived at was listed and returned by appellee for taxation did not excuse it from including in its statement of property for taxation the amount of grain owned by it on March 10, 1951. The correct amount of the excess of the average amount of the capital invested, if any, could not be ascertained until the grain on hand on March 10, 1951, was included as tangible property in the 1951 tax schedule.

Appellee justifies its omission of the grain from its statement of property for taxation by the assertion that the wheat in its elevator was the subject of the contract between it and the Klecan Grain Company of February 2, 1951, and that from that date until the grain was delivered in Kansas City, as the contract required, it was interstate commerce and as such the State of Ne-

braska was powerless to impose a tax upon it. If the premise of appellee in this regard is true the conclusion is indisputable. The Congress has power, by virtue of constitutional grant, to regulate commerce among the states. Any state tax that tends to prohibit such commerce or place it at a disadvantage as compared or in competition with instrastate commerce and any state tax which discriminates against commerce among the states is the exercise of state taxing power in an unconstitutional manner because of its obvious and inherent regulatory effect. In Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615, it is said: "The denial to the States of the power to tax articles actually moving in interstate commerce rests upon the supremacy of the Federal power to regulate that commerce, and its postulate is necessary freedom of that commerce from the burden of local taxation." See, also, Champlain Realty Co. v. Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195; McGoldrick v. Berwind-White Co., 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876; Adams Mfg. Co. v. Storen, 304 U. S. 307, 58 S. Ct. 913, 82 L. Ed. 1365, 117 A. L. R. 429; Archer-Daniels-Midland Co. v. Board of Equalization, 154 Neb. 632, 48 N. W. 2d 756; 51 Am. Jur., Taxation, § 203, p. 262.

The grain in question was owned by appellee and was in its elevator in Trenton as early as February 2, 1951. It was not selected, identified, or set apart as the wheat or any part of the wheat contracted to be sold and delivered to the Klecan Grain Company of Kansas City, Missouri. It could not have been because the contract designated that city as the place for determination of the grain that would be acceptable in satisfaction of the contract. Any grain tendered by appellee in fulfillment of its contract obligations with the purchaser had to be transported to the destination named. It had to be within the grades specified in the contract. It had to be weighed and inspected, and all charges of transportation, weighing, and inspection had to be paid

by the shipper. The purchaser was not bound to accept any grain from appellee until these requirements were satisfied. The grain or any part of it was not surrendered to any carrier for interstate transportation until March 12, 1951. This is the earliest date any of the grain, under the circumstances shown, constituted interstate commerce.

In Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715, the court stated what is there characterized as the true rule on this subject: "* * * goods do not cease to be part of the general mass of property in the State, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation to another State, or have been started upon such transportation in a continuous route or journey." The doctrine of that case influenced the decision of this court in Tredway v. Riley, 32 Neb. 495, 49 N. W. 268, 29 Am. S. R. 447. It is therein stated: "The liquors were manufactured in Iowa, and at the time of their sale were not in process of transportation to this or any other state. They had not yet become interstate commerce. * * * The fact that it was the intention of the defendant to ship the liquors to this state is quite immaterial. Such intention and purpose could not alone have the effect to make the liquors interstate commerce. They did not become such until received by the carrier for shipment. Until then they were under state jurisdiction and control." See, also, Empresa Siderurgica v. County of Merced, 337 U. S. 154, 69 S. Ct. 995, 93 L. Ed. 1276; Annotation, 11 A. L. R. 2d 938.

The intention of appellee when the contract was made with Klecan Grain Company and thereafter to transport the grain from its elevator to the purchaser at Kansas City, Missouri, is vigorously stressed and emphasized. Its intention in this regard is clearly established. It is shown that this grain would have been transported to the agreed destination before March 10,

1951, if the railroad had been able to respond to the entreaties of appellee for boxcars in which to make shipment of it. However the fact that property is intended or destined for removal from a state does not impress it with the character of interstate commerce so as to render it immune from state taxation by virtue of the operation of the commerce clause of the federal Constitution. Art. I, § 8, Constitution of United States. The immunity attaches when, but not until, the property has been started towards its destination outside the state in a movement intended to be continuous, except for such delays as are incidental to the kind of transit selected. If the interstate movement has not begun the mere fact that such a one is contemplated or that the property has been partially prepared for the purpose does not withdraw it from the power of the state to tax it. It is not enough that there is an intent to move it interstate or a plan that involves exportation from the state of its situs to another state or that there are an integrated series of events that will end with it. The tax immunity runs to the process of interstate transportation. It requires commerce among states. Empresa Siderurgica v. County of Merced, *supra;* Independent Warehouses, Inc. v. Scheele, 331 U. S. 70, 67 S. Ct. 1062, 91 L. Ed. 1346; Minnesota v. Blasius, 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; Champlain Realty Co. v. Brattleboro, *supra;* Bacon v. Illinois, *supra;* Coe v. Errol, *supra;* Tredway v. Riley, *supra.*

The wheat in the elevator of appellee on March 10, 1951, that was thereafter delivered to the Klecan Grain Company in Kansas City, Missouri, was not on that date interstate commerce. It was not immune to or exempt from local taxation. It was required to be and should have been included in the 1951 statement of property made by appellee for taxation purposes.

The judgment should be and it is reversed and the cause is remanded to the district court for Hitchcock

County for further proceedings in harmony with this opinion.

REVERSED AND REMANDED.