AMELIA GUILLARA vs. LIQUOR CONTROL COMMISSION.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued May 14th—decided June 3d, 1936.

*Samuel Rosenthal,* with whom, on the brief, was *Monroe S. Gordon,* for the appellant (plaintiff).

*Harry L. Brooks,* Assistant Attorney General, with whom, on the brief, was *Edward J. Daly,* Attorney General, for the appellee (defendant).

HINMAN, J. In August, 1934, the plaintiff took over premises, in New Britain, in which her husband had been conducting a restaurant, and continued to operate it until March, 1935, when she closed the place hoping to convert it into a tavern. Finding that it could not be so converted she reopened the restaurant after about a month and has since conducted it. In July, 1935, she made application to the liquor control commission for a restaurant permit to sell alcoholic

liquor, a hearing thereon was had on August 14th, and the application was denied "for the reason that the place is not a restaurant within the contemplation of the Act."

The Liquor Control Act (General Statutes, Cum. Sup. 1935, Chap. 151) defines alcohol, spirits, wine, and beer, and defines the words "alcoholic liquor" as including those four varieties of liquor. Section 1012c, subsections (1) to (5). Various provisions of the act unmistakably manifest an intention that the retail sale of alcoholic liquor, as so defined, to be consumed on the premises, shall be confined to places in which such sale is an incidental adjunct to another and principal established business—that of a hotel, restaurant, club, railroad or boat, and to exclude places where the sale and consumption of such liquor is the principal object or business and other business a mere incident thereto. Only as to beer, as distinguished from alcoholic liquor in the broad sense as so defined, is public sale to be consumed on the premises permitted as a principal business, under a tavern permit (§ 1034c), and that only in premises so arranged as to afford an unobstructed view of the interior from the main entrance or the street or sidewalk adjacent thereto. § 1035c.

A hotel to which a permit may be issued (§ 1031c) is precisely defined as to the requisite accommodations for the lodging of guests and facilities for preparing, cooking and serving food. (§ 1012c (6)). A restaurant, to which a permit allowing the retail sale of alcoholic liquor may be granted (§ 1032c) is defined as meaning: "Space, in a suitable and permanent building, kept, used, maintained, advertised and held out to the public to be a place where hot meals are regularly served at least twice daily as the principal business conducted therein, but which has no sleeping accommodations for the public and which shall be provided

with an adequate and sanitary kitchen and dining room and shall have employed therein at all times an adequate number of employees." § 1012c (7). There appears to be no question made that the appellant's place of business and its arrangements and equipment measure up to the requirements imposed, or that at the time of the application and the hearing before the commission the serving of food was the only business conducted therein. The sole controversy is whether or not the place also meets the qualifications as one "where hot meals are regularly served at least twice daily." As to this the trial court found that "Hot meals were served in the appellant's place of business only irregularly and intermittently during the day or evening. So far as appeared no regular meals were served. Such hot meals as were served, being served on special order, as a customer might come in during the day or evening." It was concluded therefrom that the place did not satisfy the statutory requirement in this respect.

It appears from the finding and conclusions, somewhat elucidated by reference to the memorandum of decision, that the trial court construed this provision of the statute as contemplating and requiring the serving of hot meals which are "regular" in the sense of "recurring at stated or fixed times or uniform intervals" (Webster's New International Dictionary)— that is, "regular meals" in the popular conception, being complete repasts prepared or provided for in advance and served at or during certain designated hours or "meal times," and as not including places where hot meals are served at all times, on special order, although in greater numbers during the customary meal hours. Clearly enough the facts found do not satisfy such a requirement, but so narrow a construction is neither compelled nor warranted. If

the Legislature had intended to prescribe "regular meals" in that restricted sense it easily could, and probably would, have said so. Another equally recognized meaning of "regular" is "steady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variation." (Webster's New International Dictionary.) By way of illustration, a closing out sale of an entire stock would not be in the "regular course of business" of a retail store. 4 Words & Phrases (2d Series) p. 230. "Regularly" has been defined as in a regular manner, methodically, in due order. 7 Words & Phrases (1st Series) p. 6040.

The paramount purpose of the restrictions imposed or imported by the definition of a restaurant, viz., that the serving of food should be essentially the main purpose and business and the sale of liquor a subsidiary feature, would be as well or better served by a settled policy and practice of serving hot meals, when and as ordered by customers, during business hours, at whatever time the orders were given, than by an equal number of such meals provided only during regular limited meal hours, although liquors might be sold during all other hours within the limits prescribed by the act. § 1074c. On the other hand, the spirit and plain purpose of the act would be frustrated if mere possession of food and material and facilities for providing meals limited in number and content, if ordered, would render it possible for a person maintaining such a condition of readiness to qualify in respect of the serving of meals, although customers were lacking or so few in number or food requirements, or both, that the sale of liquor under the permit obtained would constitute the principal business and the sale of food a subservient incident thereto, thereby reversing the indicated policy. The evidence of some of the witnesses testifying before the commission in opposition to the

present application (which we have been called upon to examine in connection with requests to correct the finding), if believed, would point to a scarcity of customers, prior to the hearing, which might suggest such a situation. However, the facts as found show not only preparedness, in materials, employees and equipment, for the serving of hot meals to customers who ordered them, but also monthly receipts of an amount which would tend to negative a merely colorable set-up of a restaurant business with the sale of liquors as the ultimate purpose.

The trial court evidently regarded as decisive against the applicant the fact that the service of meals was on special orders from time to time, during the day, as customers appeared, and not as "regular meals" in the sense of those served at or during stated recurring "meal hours" daily. Our view is that the serving of meals, although on order, as to each, and at any time while the place is open for business, and so, it may be said, "irregularly and intermittently" as to time during the day as distinguished from service thereof between stated hours for specified meals, if followed consistently and steadily would suffice to satisfy the definition. A place at which, during the hours when restaurants are usually open, hot meals are served to all customers ordering them, meets the statutory requirement that a restaurant be a place where hot meals are regularly served at least twice daily. Such service must be sufficient in nature and amount, however, to evidence and afford assurance of a bona fide restaurant business instead of a mere pretext for the obtaining of a permit to sell alcoholic liquor as a principal purpose and enterprise.

We apprehend that because the fact that no "regular meals" were served was regarded by the trial court, and very likely by the commission, as decisive, inquiry

and consideration was not directed, to the extent it otherwise might have been, to elements of the situation which assume increased importance in view of the construction we accord the statutory provisions involved. The parties stipulated that the trial court might render a decision solely upon the record of the testimony taken at the hearing before the commission and the inspector's report. The finding of facts on appeal, also based on the record, was made, necessarily, without the benefit of regular examination and cross-examination, and personal observation of witnesses —important aids in determining weight and veracity. For these reasons we forbear to terminate the case upon the record before us, but remand it for a new trial in the light of this opinion.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.