ANTHONY LEOGRANDIS ET AL. *v*. LIQUOR CONTROL COMMISSION

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued April 5—decided May 18, 1962

*Frederic E. Mascolo,* for the appellants (plaintiffs).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant).

ALCORN, J.  The named plaintiff, hereafter referred to as the plaintiff, operated an establishment known as Cosmo's Hide-Away, Inc., in Southington under a restaurant liquor permit issued by the defendant.  Following a hearing held on July 25, 1960, the defendant suspended the plaintiff's permit for thirty days on the ground that the premises were unsuitable by reason of the fact that they were not

a restaurant within the meaning of the Liquor Control Act (General Statutes, c. 545), "in that the establishment is not kept, used, maintained, advertised and held out to the public to be a place where hot meals are regularly served." The plaintiff appealed to the Court of Common Pleas, which dismissed the appeal. Section 30-1(17) of the General Statutes, on which the defendant relied, is printed in the footnote.[1]

The evidence before the defendant, and which the court had before it in reviewing the defendant's action on appeal, may be summarized as follows: The defendant's inspector visited the premises at the noon hour on February 9, 10 and 11, 1960, and found, on one of those dates, three food customers who spent a total of $1.35 for sandwiches. Food supplies on hand on February 10, 1960, were small in both quantity and variety and were, for the most part, frozen. The plaintiff's receipts from food sales on February 2, 3 and 4 totaled $4.65; on February 5 they amounted to $6.80; on February 6 they were $15.95; there were none on February 7, 8 and 9; and on February 10 they amounted to $1.35. The plaintiff's receipts from liquor sales for undisclosed periods totaled $47,989.45 as against receipts from food sales totaling $2074.65. The plaintiff admitted that he did little or no noon hour business and very little, if any, supper business. Most of the plaintiff's business is done on Friday and Saturday nights, when he provides a band and floor show and

[1] "Sec. 30-1. DEFINITIONS. . . . (17) 'Restaurant' means space, in a suitable and permanent building, kept, used, maintained, advertised and held out to the public to be a place where hot meals are regularly served, but which has no sleeping accommodations for the public and which shall be provided with an adequate and sanitary kitchen and dining room and shall have employed therein at all times an adequate number of employees."

has a chef on duty from 9 p.m. to 1 a.m. Food for these nights is purchased on Thursday or Friday, and the unused portion is stored in the freezer. There is little or no business done during the week. The plaintiff claimed that he always had food on hand but that, for reasons unknown, he was not patronized by food customers.

The former statutory definition of a restaurant included the words "a place where hot meals are regularly served at least twice daily as the principal business conducted therein." Cum. Sup. 1935, § 1012c (7). By amendment in 1945, the phrase "at least twice daily as the principal business conducted therein" was eliminated, and the definition assumed its present form, as quoted in the footnote. Sup. 1945, § 617h (a). During the hearing before the defendant, the chairman stated to the plaintiff: "Question is—do you have a bona fide restaurant where hot meals are served twice daily—that is our interpretation of a restaurant—you don't serve hot meals twice daily at the present time?" The plaintiff claims that this statement demonstrates an illegal and erroneous interpretation of the present statute by the defendant and is sufficient to invalidate its action. The chairman's statement is not, however, available to show the reasons actuating the defendant or the grounds for its decision. These can only be shown by its formal action. *Thayer* v. *Board of Appeals,* 114 Conn. 15, 20, 157 A. 273. The ground stated by the defendant in its suspension order indicates an application of the present statutory definition of a restaurant. The decisive question is whether there was sufficient evidence to support the defendant's stated reason for the suspension. In discussing the meaning of the term "restaurant" under the earlier statute, we said that the

service of meals to customers must be sufficient in nature and amount "to evidence and afford assurance of a bona fide restaurant business." *Guillara* v. *Liquor Control Commission,* 121 Conn. 441, 446, 185 A. 398; *Melarose* v. *Liquor Control Commission,* 123 Conn. 318, 319, 194 A. 725; *Neubauer* v. *Liquor Control Commission,* 128 Conn. 113, 115, 20 A.2d 669. That is equally true under the language of the present statute. The mere possession of a supply of food sufficient to offer a limited number and variety of meals would not make the premises a restaurant under § 30-1 (17) if there were so few food patrons or their demands for food were so insignificant that the service of hot meals was not a regular part of the permittee's business. In the light of the evidence before the defendant, we cannot say that it acted illegally or so arbitrarily and unreasonably as to abuse its discretion in reaching the conclusion appealed from.

The plaintiff also complains that the court erred in denying an oral motion to permit the introduction of evidence in addition to that offered at the defendant's hearing. The record as presented fails to show that such a motion was made or denied. Consequently, we cannot consider this assignment of error. *Cohn* v. *Mt. Zion Baptist Church,* 130 Conn. 362, 366, 34 A.2d 129; *Chariott* v. *McMullen,* 84 Conn. 702, 707, 81 A. 65. The plaintiff seeks to present this issue in his brief. Had the plaintiff desired to have the record amended to disclose the ruling under attack, he should have proceeded under §§ 402, 423 or 435 of the Practice Book.

There is no error.

In this opinion the other judges concurred.