[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Statement of the Case
The plaintiffs, Mark Kulungian and Lynn Kulungian, appeal a decision of the defendant Planning Zoning Commission of the Town of Enfield denying their special use permit application.
The defendant acted pursuant to General Statutes § 8-3c
(b) and the Town of Enfield's Zoning Ordinances (Ordinances). The plaintiffs appeal pursuant to General Statutes § 8-8 (b)(1).
II. Procedural History
The defendant's decision was published in the JournalInquirer on October 25, 1996. (Appeal ¶ 19; Return of Record [ROR], Item # 26.) The plaintiffs commenced this appeal by service of process upon the deputy town clerk of Enfield and upon the chairman of the defendant Planning Zoning Commission of Enfield on November 7, 1996. (Sheriff's Return.) The Return of Record was filed on January 21, 1997. An amended appeal was filed on March 11, 1997. An answer was filed on May 21, 1997. The plaintiffs' brief was filed on August 4, 1997, the defendant's brief was filed on October 2, 1997 and plaintiffs' reply brief was filed on October 16, 1997. The court heard argument on December 15, 1997. A certified copy of the Town of Enfield's Zoning Ordinances were hand-delivered to the court on December 19, 1997.
III. Facts
The plaintiffs, d/b/a Pool Table Magic, are lessees of premises located at 138 South Road, Enfield, Connecticut (the premises). (Plaintiffs' Exhibit 1.) The plaintiffs operate the business, Pool Table Magic, as a facility for playing; billiards/pool and the retail sale of billiards/pool tables and equipment. [ROR, Item # 24.c.] The premises are located in a shopping center in a Business Local Zoning District. [ROR, Item # 1.] On August 20, 1996, the plaintiffs submitted an application for a special use permit under Section 6-1.2 of ordinances. (ROR, Item ## 1, 6.) The plaintiffs' intention was to establish a restaurant within their facility and obtain the appropriate permit to enable them also to serve beer and wine. (ROR, Item # CT Page 1826 1.) Initially, the plaintiffs' made an application for a Class 2 permit, however, they changed it to a Class 1 permit. (ROR, Item ## 1, 6, 10.)
On October 3, 1996 and October 17, 1996, the defendant held a public hearing on the plaintiffs' application. (ROR, Item # 11, Transcript of 10/3/96 Public Hearing; ROR, Item # 22, Hearing of 10/17/96 Public Hearing.) After the public hearing was closed, the commissioners discussed the application and held a vote. The result was two in favor and four opposed to the application. (ROR, Item # 22, separately numbered as pp. 1-4.) Robert Burke, town planner, then asked for reasons for the vote and several members expressed their personal reasons for their decision. (ROR, Item # 22, separately numbered as pp. 4-5.) On October 18, 1996, the defendant mailed its decision to the plaintiffs stating its denial of the application and providing five reasons for the denial. (ROR, Item # 25.)
The reasons were:
"1. The proposed liquor use would be less than 1000 feet from the Mark Twain public recreation area and site of Mark Twain Elderly Housing Complex.
2. The proposed restaurant is not an appropriate type of restaurant for the addition of a Class I liquor permit.
3. The proposed liquor use of such location, size and character that, in general, it will not be in harmony with the appropriate and orderly development of the district in which it is proposed to be situated and will be detrimental to the orderly development of adjacent properties in accordance with the zoning classification of such properties.
4. The location and height of the existing building which will contain the liquor use, the limited fencing, and the limited landscaping on the site is such that the use will hinder or discourage the appropriate development and use of adjacent residential land and buildings, or impair the value thereof.
5. The location and size of the liquor use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets is such that both pedestrian and vehicular traffic to and from the liquor use and the assembly of persons in connection therewith CT Page 1827 will be hazardous or inconvenient to, or incongruous with, the nearby residential district or conflict with the normal traffic of the neighborhood." (ROR, Item # 25.)
IV. Discussion
The issue in the present case is whether the defendant improperly denied the plaintiffs' application for a special permit.
A. Aggrievement
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over an administrative appeal. Jolly,Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). The plaintiffs properly pleaded aggrievement. (Appeal, ¶ 20.) The plaintiffs are the lessees of the property that is the subject of the defendant's decision. (Plaintiffs' Exhibit 1.) The Court finds the plaintiffs are aggrieved.
B. Timeliness
The plaintiffs served process on the defendant's chairperson and the town's deputy clerk on November 7, 1996, which is less than fifteen days after the defendant's decision was published in the local newspaper on October 25, 1996. This appeal, therefore, is timely and the proper parties were served, pursuant to General Statutes § 3-8 (b), (e).
C. Standard of Judicial Review
When acting upon a special permit, a zoning commission acts in an administrative capacity. Double I Limited Partnership v.Plan and Zoning Commission, 218 Conn. 65, 72, 588 A.2d 624
(1991). When acting in an administrative capacity, a zoning commission's "limited function is to determine whether the applicant's proposed use is one which satisfies the standards set forth in the [existing] regulations and the statutes." (Internal quotation marks omitted.) Kaufman v. Zoning Commission,232 Conn. 122, 150, 653 A.2d 798 (1995). "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property CT Page 1828 values. General Statutes § 8-2." (Internal quotation marks omitted.) Housatonic Terminal Corporation v. Planning ZoningBoard, 168 Conn. 304, 307, 362 A.2d 1375 (1975). "The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated . . . ." (Citation omitted; internal quotation marks omitted.) Whisper Wind Development Corporation v. Planning Zoning Commission, 32 Conn. App. 515, 519, 630 A.2d 108 (1993), aff'd 229 Conn. 176, 640 A.2d 100 (1994).
On appeal of an administrative decision, "[t]he agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given."Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,539-40, 525 A.2d 940 (1987). "The evidence, however, to support any such reason must be substantial . . . ." (Citation omitted.) Id., 540. "The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Internal quotation marks omitted.) Id., 541.
The burden of proof is on the plaintiffs to demonstrate that the defendant acted improperly. Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991).
D. The Proposed Restaurant was not an Appropriate Type of Restaurant for the Addition of a Class I Liquor Permit
One of the reasons offered by the defendant was that the restaurant proposed by the plaintiffs was not an appropriate restaurant for the addition of the beer and wine permit. The plaintiffs currently operate a pool hall, where individuals come in to play pool. They also operate a retail store, selling pool tables and equipment. They do not currently operate a restaurant, but proposed one in their application. The plaintiffs applied for a Class I restaurant wine and beer permit pursuant to Ordinance6-1.2, which provides for such a permit as long as a special use permit is obtained.[1] While Chapter 6 of the Ordinances does not provide a definition for restaurant, it states that the CT Page 1829 definitions of words used in this chapter shall be the same as the definition in General Statutes § 30-1.[2] General Statutes § 30-1 states: "(16) `Restaurant' means a restaurant as defined in section 30-22." General Statutes § 30-22 (e) states: "`Restaurant' means space, in a suitable and permanent building, kept, used, maintained, advertised and held out to the public to be a place where hot meals are regularly served, . . . and which shall be provided with an adequate and sanitary kitchen and dining room and employs at all times an adequate number of employees." The plaintiffs' proposed restaurant menu consists of popcorn, nachos, hot dogs, coffee, tea, soda, juice, water, soda, candy and crackers. (ROR, Item # 24.d.) The dining room consists of a food service area with five machines, including a popcorn popper, a nacho merchandiser, a cheese warmer, a hot dog steamer, a coffee maker and three tables with chairs. The application also provides for a kitchen. During the public hearing, members of the commission expressed concern that this food service area did not constitute a restaurant. At one point, one of the plaintiffs states: "People cannot come in here and sit down and drink. The only people that are allowed to be served are the people that are playing pool. There is no place. We're not asking to build a bar and you will see if you take a moment to read through the packet, you will see the only people that will be allowed to drink are those that are playing pool and it will be monitored because it is a big open room as you can see in the picture." (ROR, Item # 11, p. 10.) Commissioner DiPace responds: "I was going to ask you who was going to be allowed to drink — people coming into the restaurant? You said no, people playing pool. So it's not a restaurant. It's a pool hall. And you're really not applying for a restaurant permit and it's really technically not a restaurant. It's simply like a movie cinema where they have a popcorn machine, nachos and stuff like that where you walk up and buy stuff. Right or wrong?" (ROR, Item # 11, p. 10.)
In dealing with the issue of whether an establishment constitutes a restaurant within the meaning of General Statutes § 30-22, the Connecticut Supreme Court said: "A restaurant is primarily engaged in the preparation and service of hot meals; . . . and service of liquor for consumption by patrons is incidental." (Citation omitted.) Barnini v. Liquor ControlCommission, 146 Conn. 416, 420, 151 A.2d 697 (1959). "The mere possession of a supply of food sufficient to offer a limited number and variety of meals would not make the premises a restaurant under . . . [the statute] if there were so few food patrons or their demands for food were so insignificant that the CT Page 1830 service of hot meals was not a regular part of the permittee's business." (Citation omitted.) Leograndis v. Liquor ControlCommission, 149 Conn. 507, 511, 182 A.2d 9 (1962). There is substantial evidence in the record to support the defendant's finding that the plaintiffs' application does not propose a restaurant with a dining room open to the public as required by General Statutes § 30-22. The evidence supports a finding that the plaintiffs are primarily engaged in operating a pool hall and selling pool equipment, and are proposing a snack area in order to qualify for a beer and wine permit. The service of food "must be sufficient in nature and amount . . . to evidence and afford assurance of a bona fide restaurant business instead of a mere pretext for the obtaining of a permit to sell alcoholic liquor as a principal purpose and enterprise." (Citation omitted.) Guillara v. Liquor Control Commission, 121 Conn. 441,446, 185 A. 398 (1936). The court finds that there is substantial evidence in the record to support the defendant's decision that the plaintiffs' proposed restaurant use does not satisfy the standards set forth in the ordinances and statutes and thus, does not qualify for a Class I restaurant wine and beer permit.
Having decided that one of the defendant's reasons is sufficient, the court will sustain the defendant's action. Huckv. Inland Wetlands Watercourses Agency, supra,203 Conn. 539-40.
Accordingly, the appeal is dismissed.
Klaczak, J.