96 N.W.2d 408 (1959)
168 Neb. 513
UNITED STATES COLD STORAGE CORPORATION, a corporation, Appellee,
v.
Joseph STOLINSKI, County Assessor of Douglas County, Nebraska, et al., Appellants.
No. 34494.
Supreme Court of Nebraska.
May 8, 1959.
*411 Eugene F. Fitzgerald, County Atty., John C. Burke, Arthur D. O'Leary, Deputy County Attys., Omaha, for appellants.
Kennedy, Holland, DeLacy & Svoboda, Omaha, for appellee.
Heard before SIMMONS, C. J., and CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.
CARTER, Justice.
The plaintiff commenced this action to obtain a declaratory judgment holding section 77-1226, R.S.Supp., 1957, to be unconstitutional and void, and of no force and effect. The trial court held the act unconstitutional and enjoined the defendants from enforcing or attempting to enforce the act against the plaintiff. The defendants have appealed.
The plaintiff owns and operates a cold storage warehouse in Omaha. Its present plant was constructed in 1951 and 1952 at a cost of $1,750,000. It was specially designed for the volume handling of in-transit goods between points of origin and points of destination. It has a capacity of 25,000,000 pounds of cold storage products, and 90 *412 percent of the goods handled are asserted to be in interstate commerce. The business is highly competitive with similar warehouses in adjoining and more distant states. The products stored consist mainly of frozen fruits and vegetables, frozen berries, frozen fish, and frozen meats. These commodities are perishable and must be kept under refrigeration at all times. They arrive and depart in refrigerated railroad cars and refrigerated trucks, usually on a through rate from a point of origin in a foreign state to a point of destination in a different foreign state, with stop-over privileges in transit for storage purposes.
The commodities received are handled at the warehouse by the lot method. The commodities are not commingled with other shipments, each shipment maintaining its identity from point of origin to the point to which it is consigned. Such lot shipments are not broken up for distribution in this state. Most of them originate in the west coast states and are destined for states in the east. The evidence of the plaintiff is that about 90 percent of the products stored by the plaintiff are in interstate commerce and that they have no taxable situs in Nebraska. Plaintiff admits that about 10 percent of its business is not in interstate commerce. It contends however that its business could not exist without the interstate business, its plant in Omaha having been built specially for the purpose of handling in-transit commodities being transported in interstate commerce.
The plaintiff admits that it refused to comply with section 77-1226, R.S.Supp., 1957, and brought this action to test the validity of the act. The material facts are not in dispute, consequently the case resolves itself largely into a question of law.
Concisely stated as it applies to the plaintiff in this case, section 77-1226, R.S.Supp., 1957, provides: Every person in charge of a warehouse where goods, except used household goods, are stored, shall, on or before April 1 of each year, furnish to the county assessor a list of all such goods stored by him on March 1 of each year. In listing and reporting such goods, information shall be given as to the name, kind, quantity, and grade so far as can be ascertained.
Our Constitution provides that taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises. Art. VIII, § 1, Constitution of Nebraska. The Legislature has plenary power over taxation within the limits of the Constitution. Consumers Public Power Dist. v. City of Lincoln, 168 Neb. 183, 95 N.W.2d 357. The legislative power to tax all tangible property and franchises includes the right to adopt any reasonable regulation that may seem necessary in making taxes uniform and proportionate upon all of the assessable tangible property in the state. Lincoln Transfer Co. v. County Board of Equalization, 78 Neb. 197, 110 N. W. 724. It is plain that in the enactment of the statute before us the Legislature was moved by information that property subject to taxation in this state has escaped taxation by being held in storage warehouses and not reported to the assessor by the owner as the law requires. The purpose of the act is to render it impossible for any such taxable property to escape taxation. Any reasonable requirement imposed upon the warehouseman to bring about this result is not inhibited by the due process clause or the unreasonable search and seizure clauses of the state and federal Constitutions. Interstate Forwarding Co. v. Vineyard, Tex. Civ.App., 3 S.W.2d 947; Washington Nat. Bank v. Daily, 166 Ind. 631, 77 N.E. 53.
The pertinent question for decision is whether or not the statute is reasonable. The warehouseman, of course, has no interest in the taxability of any property in his keeping since the assessor is attempting no discovery that will directly affect the warehouseman or his property. The complaint is that the requirements are unreasonable in that they exceed the necessities of the situation and result in onerous and costly duties on the part of plaintiff in complying with its provisions.
*413 As we have heretofore stated, the purpose of the legislation is to uncover taxable property in order that it can be subjected to its just share of taxes. We have no hesitancy in saying that a reasonable regulation to accomplish this objective does not offend constitutional provisions.
While the power to tax, and any regulations incidental thereto reasonably necessary to the exercise of that power, is lodged in the Legislature, the power is not an absolute one. It is subject to a rule of reasonableness, and where a statute exceeds the requirements of reasonableness and attaches conditions which are onerous, oppressive, and costly, the legislation cannot be sustained. The plaintiff asserts that the statute before us is such a statute. It is claimed that the act requires a disclosure enmasse or in gross of the private affairs of the warehouseman and the owner of the stored property and violates the unreasonable search and seizure clauses of the state and federal Constitutions contained in Article I, section 7, Constitution of Nebraska, and the Fourth Amendment, Constitution of the United States. We do not think there is any merit to this contention if the requirements of the act imposed upon the warehouseman do not exceed the bounds of reasonableness. It is true that the Legislature may not require information in such a reporting statute that is needless, oppressive, or beyond the real purpose of the act. Such information required must be something more than a mere fishing expedition into a mass of records which may or may not be pertinent to the purposes of the act. Ordinarily the requirement of a report enmasse or in gross to uncover the unlawful acts of another are held to be too onerous and costly, and therefore unreasonable. Under the present statute the information sought relates itself to the goods on hand on one day of the year, the assessment date. It requires the name and address of each owner and the kind, quantity, and grade of the property so far as it can be ascertained. The mere listing of the property ordinarily indicates its kind, and the quantity and grade is usually shown on the warehouse receipt. The requirements are not unreasonable, either in the time covered or the extent of the information sought. The information required relates itself directly to the uncovering of taxable property not reported by the owner. In Lincoln Transfer Co. v. County Board of Equalization, supra, the court sustained the validity of a similar act. We do not think the act is unreasonable in the respects noted and was within the power of the Legislature to enact.
It is contended that the act is unreasonable in that it burdens the warehouseman with the expense of preparing the report and with an undue interference with its business operations. The evidence shows that it would take two employees a period of three weeks to assemble the required information. There is evidence also that the records are in constant use in the business of the plaintiff during business hours, and that it would be impractical to do the work except on overtime outside of regular business hours. The cost to plaintiff in furnishing the required information is estimated to be $500 per year. It cannot be disputed that any reporting statute burdens the party concerned with some expense and interferes to some degree with the operation of his business. We cannot say, however, that a warehouse with a capacity of 25,000,000 pounds, the equivalent of 800 carloads of ordinary goods, is unreasonably burdened under the situation disclosed by the foregoing evidence. Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327. The cost is usually commensurate with the volume of business transacted. Private rights must to a reasonable extent yield to the public necessity, and where the limitation on private rights is within the bounds of reasonableness the wisdom of the legislation is a legislative matter and not a judicial one.
The plaintiff asserts that the statute is against public policy in that it requires *414 a warehouseman to violate the relation of trust and confidence existing between a warehouseman and those who store their products in the warehouse. Plaintiff also asserts that the disclosure required by the act invades the right of privacy and offends constitutional provisions prohibiting unreasonable searches and seizures. Plaintiff further asserts that the act violates the right of silence, a right correlative to the right of free speech, which is protected by the Constitution. Plaintiff claims that the act is violative of the fair play doctrine stemming from the due process clauses of the state and federal Constitutions. It claims also that the act abridges the privileges, immunities, and liberties incident to the conduct of legitimate business. It claims that the act takes private property for public use without compensation and without due process of law, contrary to constitutional inhibitions. There is no merit to these contentions. We do not deem it necessary to deal with each of these questions separately. Each is discussed in Interstate Forwarding Co. v. Vineyard, supra, and we adopt the reasoning of that opinion in dealing with these questions.
The plaintiff contends that the act is in violation of the commerce clause of the Constitution of the United States in that it is an unlawful burden on interstate commerce and impedes its free flow through the State of Nebraska. In this respect it is shown that 90 percent of the goods stored are shipped from points in states other than Nebraska to points within other states, with stop-over privileges in transit. The plaintiff's manager, and other witnesses as well, testified that such goods are in interstate commerce. The statements that such goods are in interstate commerce are nothing more than conclusions of such witnesses. The facts upon which it could be determined if such goods had a taxable situs in Nebraska on March 1 are not in the record. The defendants do not admit that such goods are in interstate commerce, although they do assert that it is not material whether they are or not.
The plaintiff relies largely on Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 276, 91 L.Ed. 265. In that case it is said: "Our starting point is clear. In two recent cases we applied the principle that the Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States. * * * This limitation on State power, * * * does not merely forbid a State to single out interstate commerce for hostile action. A State is also precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow of trade between States. * * * These principles of limitation on State power apply to all State policy no matter what State interest gives rise to its legislation. A burden on interstate commerce is none the lighter and no less objectionable because it is imposed by a State under the taxing power rather than under manifestations of police power in the conventional sense. * * * The power to tax is a dominant power over commerce. Because the greater or more threatening burden of a direct tax on commerce is coupled with the lesser need to a State of a particular source of revenue, attempts at such taxation have always been more carefully scrutinized and more consistently resisted than police power regulations of aspects of such commerce."
The plaintiff also cites State v. T. W. Jones Grain Co., 156 Neb. 822, 58 N.W. 2d 212; Archer-Daniels-Midland Co. v. Board of Equalization, 153 Neb. 776, 46 N.W.2d 171; and State v. Smith, 135 Neb. 423, 281 N.W. 851. But the conclusions of law in the foregoing cases are based on findings of fact to the effect that the goods were or were not in interstate commerce at the time involved and, consequently, that they had or had not acquired a tax *415 situs in the taxing state. Whether or not goods being transported in interstate commerce with stop-over privileges in transit acquire a tax situs at the stop-over point involves a complicated question of law and fact.
The correct rule in such cases has been stated as follows: "It is universally agreed that personal property actually in transit in interstate commerce is protected by the commerce clause of the Federal Constitution from local taxation in the states through which it passes. Where, however, the interstate transit is broken or interrupted in a particular state, the question arises whether the property may thereupon be subjected to local taxation therein. In this situation the principle has been adopted by the Supreme Court of the United States and adhered to by the lower Federal courts and the courts of the various states that if the break in the interstate journey was caused by the exigencies or conveniences of the chosen means of transportation, considerations of the safety of the goods during transit, or natural causes over which the taxpayer has no control, the continuity of the transit remains unimpaired, and the immunity of the goods from state or local taxation is consequently unaffected; but if the interruption in the journey occurred for purposes connected with the business convenience or profit of the taxpayer, or the owner of the property, then the continuity of the transit must be regarded as having been so disturbed as to destroy the immunity of the property from local taxation." Annotation, 171 A.L.R. 284. See, also, Independent Warehouses, Inc. v. Scheele, 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346; State of Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131.
Whether the property involved in the present case is in interstate commerce while stored in plaintiff's warehouse, or whether it has acquired a tax situs because the interruption of its movement in interstate commerce was for the convenience of the taxpayer or owner, is a question to be determined in the first instance by the taxing authorities. The record before us is so fragmentary insofar as it relates to that question that, assuming the materiality of the evidence, we cannot say with any degree of certainty that the goods were in interstate commerce without a taxable situs in Nebraska and therefore immune from local taxation.
The plaintiff further contends that the act impedes the free flow of interstate commerce because of the following state of facts: The goods stored by the plaintiff are largely goods stored in transit under stop-over privileges under a through rate. It is immaterial to the consignor or consignee from the economic standpoint whether such goods are stored at Omaha or points outside the state. The manager of the plaintiff company testified that since the enactment of the legislation here questioned plaintiff has lost about a third of its in-transit business. He states that shippers refuse to store goods in in-transit warehouses in this state and expose them to taxation in Nebraska when such goods can be stored without additional expense in similar warehouses in other states which have no such legislative requirements imposed on the warehousemen. The manager of a cold storage warehouse at Hastings testified that his company has lost from 30 percent to 40 percent of its business because of the threat of taxation contained in the legislation under attack. The manager of a dry storage warehouse in Lincoln testified to a heavy loss of in-transit business, particularly in the storage of sugar. He states that prior to the enactment of section 77-1226, R.S.Supp., 1957, large quantities of sugar were stored in transit and that thereafter not one bag of sugar had been stored in his warehouse. He testified that he was advised by the shippers of sugar that none would be stored in Nebraska as long as their goods were exposed to taxation by the threat of the act under consideration. Other warehousemen testified to heavy losses in in-transit business because of the legislation here questioned. It is not disputed *416 in this record that warehousemen have suffered heavy losses in the business of storing in-transit products. It is clear from the record that shippers of goods are by-passing in-transit warehouses in this state in favor of similar warehouses in other states where the claimed exposure to and threat of taxation does not exist. The record does not dispute the claims of the plaintiff that it has suffered heavy losses in in-transit business since the enactment of section 77-1226, R.S.Supp., 1957. In fact, the evidence shows that in-transit warehouses in this state have suffered heavy losses since the enactment of the legislation here questioned.
As we have before stated, the record does not conclusively establish that the goods stored in plaintiff's warehouse are in interstate commerce. We have heretofore held in this opinion that section 77-1226, R.S.Supp., 1957, is an aid to the taxing of all tangible property in the state uniformly and proportionately, and that such statute does not exceed the test of reasonableness in the accomplishment of this purpose. The statute being a reasonable one within the power of the Legislature to enact, the question as to whether or not the limitations upon private rights is greater or less important than the public necessity is peculiarly a legislative matter. By the enactment of the act the Legislature has determined that the public necessity exceeds the economic injury done to its citizens by the act. This court has often said that the wisdom of legislation is a legislative matter and, when enacted in compliance with constitutional requirements, the courts are powerless to intervene. We conclude that the record does not demonstrate that section 77-1226, R.S.Supp., 1957, interferes with or impedes the free flow of interstate commerce because of the exposure of the property to taxation and the consequent voluntary desire of shippers to use warehouses outside the state. It is not established that the goods in question, while held in the warehouse of the plaintiff on March 1, were in fact moving in interstate commerce, assuming that such issue was material in a suit such as we have before us.
It is contended by the plaintiff that section 77-1226, R.S.Supp., 1957, violates Article III, section 18, of the Constitution of Nebraska, and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The basis of the constitutional objection is that the act is discriminatory and amounts to special legislation.
We point out that the act provides: "Every owner, keeper, or person in actual charge of any and every storage house, warehouse, or any place where goods, wares, or merchandise of any and all kinds and description, except used household goods, are stored or kept by him, * * *." As we have hereinbefore pointed out, the purpose of the act was to uncover taxable property stored in warehouses which had not been reported for assessment by the owners thereof, in order that the mandate of the Constitution may be carried out that all tangible property in the state shall be uniformly and proportionately assessed for taxation purposes. It is the contention of the plaintiff that by excluding used household goods, the act is discriminatory and amounts to special legislation, when measured with the purpose of the act to uncover all unreported tangible property for taxation. The act is incidental to the power of the Legislature to tax and is clearly applicable to the taxation of all tangible property. The state has a wide discretion in classifying businesses for purposes of taxation. It has been held proper to treat railroads, insurance companies, banking and money-loaning institutions, and other types of business enterprises as a proper classification for taxing purposes. The business of operating warehouses also affords a proper classification where a reasonable basis for so doing exists and such classification is not purely arbitrary. In Blauvelt v. Beck, 162 Neb. 576, 76 N.W.2d 738, 749, we said: "The Legislature may make a reasonable classification of persons, *417 corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences of situation and circumstances surrounding the members of the class, relative to the subject of legislation, which render appropriate its enactment." Warehouses afford a proper basis for classification where the purpose of the legislation is common to the class such as we have here.
While the Legislature may legislate with reference to a class of persons, it may not arbitrarily divide a natural class of persons in two fractions and then enact different rules for the government of each. State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N.W. 835; United Community Services v. Omaha Nat. Bank, 162 Neb. 786, 77 N.W.2d 576.
The Legislature in the instant case has attempted to make a class of all warehouses storing goods except those storing used household goods. Used household goods are tangible property subject to taxation in this state. We fail to see any reason for excluding warehouses storing used household goods from the operation of the act. The exemption of such warehouses from the class appears to be wholly arbitrary. The uncovering of unreported taxable used household goods for assessment purposes is as consistent with the purpose of the act as the uncovering of any other taxable tangible property. The act creates an arbitrary classification of warehousemen upon which the act is to operate. It discriminates against some warehousemen and in favor of others. It grants special and exclusive privileges and immunities to some warehousemen which it denies to others in the same class. Exceptions contained in a legislative classification cannot be justified if the discrimination thus made has no reasonable relation to the purposes of the act in which it is found. We find no reasonable basis for excluding warehouses storing used household goods, when the general purposes of the act are considered. The act clearly violates that part of Article III, section 18, of the Constitution which provides: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted." We hold that section 77-1226, R.S.Supp., 1957, is void and unenforcible.
For the reasons stated the judgment of the district court is affirmed.
Affirmed.