SAFEWAY STORES, INCORPORATED, A CORPORATION,
APPELLANT, V. NEBRASKA LIQUOR CONTROL
COMMISSION ET AL., APPELLEES.

140 N. W. 2d 668

Filed March 4, 1966. No. 36105.

Kennedy, Holland, DeLacy & Svoboda, Yale C. Holland, and Robert A. Skochdopole, for appellant.

Clarence A. H. Meyer, Attorney General, and Robert R. Camp, for appellees.

Jack W. Marer, Michael L. Lazer, and Emory P. Burnett, for amici curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

On February 8, 1963, Safeway Stores, Inc., filed an application with the Nebraska Liquor Control Commis-

sion for a "Beer Off Sale Only" license to engage in the sale of beer at 2924 Leavenworth Street in Omaha. The application was referred to the city council of Omaha, as the statute requires, and on February 19, 1963, the city council recommended to the commission that the application be granted. On March 7, 1963, the chief enforcement officer of the commission protested the grant of the application on the ground that the applicant already had more than two such licenses and that L.B. 105, Laws 1963, c. 308, p. 909 (now sections 53-124.02 to 53-124.07, R. S. Supp., 1963), made the applicant ineligible for further licenses. The commission sustained the protest of the chief enforcement officer and denied the application. On appeal to the district court for Lancaster County, the denial of the application was sustained. Safeway Stores, Inc., thereupon perfected its appeal to this court.

The parties stipulated that Safeway Stores, Inc., had all the qualifications for the granting of a license to it except for the restrictions contained in L.B. 105. It was further stipulated that Safeway was the holder of 10 "Beer Off Sale Only" licenses and one package liquor license on the date of the filing of the application herein. The evidence taken before the commission was also stipulated as evidence in the district court. The sole question is the constitutionality of L.B. 105. In this connection it was stipulated that L.B. 105 was passed on February 26, 1963, with the emergency clause attached, and was signed by the Governor on March 4, 1963. It was further stipulated that the chief enforcement officer filed his protest on March 7, 1963, and that the order of the commission denying the application was rendered on March 22, 1963.

The plaintiff contends that the act discriminates between hotels having more than 25 sleeping rooms, and other types of business in the same class, and, in addition thereto, that it discriminates between members of the same class in that it provides a different application

as between hotels containing 25 sleeping rooms and those containing less than 25.

The general rule as to classification for purposes of legislation has been stated many times by this court to be as follows: "The rule established by the authorities is that while it is competent for the legislature to classify, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified." State ex rel. Dawson County v. Farmers & Merchants Irr. Co., 59 Neb. 1, 80 N. W. 52. See, also, United States Cold Storage Corp. v. Stolinski, 168 Neb. 513, 96 N. W. 2d 408; Terry Carpenter, Inc. v. Wood, 177 Neb. 515, 129 N. W. 2d 475.

The Legislature has broad powers in the regulation and control of the sale and dispensing of alcoholic liquors. The statute before us is not a revenue law. Its purpose is the regulation and control of the liquor traffic and, as such, is in a somewhat different position than in the ordinary exercise of the police power for the protection of the health, safety, morals, and welfare of the public. But even so, justification for classification must exist; arbitrary treatment cannot be sustained. It is not always fatal for the Legislature to exempt certain members of a class from the operation of an act applicable to the whole class. In State ex rel. Meyer v. Knutson, 178 Neb. 375, 133 N. W. 2d 577, in dealing with this precise question, we said: "But the Legislature may properly prescribe the limits of its regulation. Here the Legislature concluded to exempt all persons from the statute while engaged in construction work for themselves, in the construction of buildings covering less than 5,000 square feet and the construction cost is less than $20,000, and other similar exemptions. The exemptions are uniform as to class. The extent of the regulation under such circumstances is within the scope of the Legislature's prerogative." On the other hand, we held in United

States Cold Storage Corp. v. Stolinski, *supra,* that a statute requiring warehousemen to furnish the tax assessor with lists of property in their warehouses was void because it excluded household goods from the act, thus creating an arbitrary classification of warehousemen and granted privileges and immunities to some which it denied to others. The question before us resolves itself into a determination of which of the two principles applies in the instant case.

In the United States Cold Storage Corp. case the court was dealing with a taxation matter. All property in the warehouse was taxable. We held that the exclusion of household goods under a taxation statute, without any justifiable reason for its exclusion, was arbitrary and unreasonable, and lacking in uniformity of taxation. In the Knutson case we were dealing with a statute providing for the licensing of architects. The Legislature in determining the scope of the act exempted certain members of the class from the operation of the act. As an example, it excluded architects from the licensing provisions who were engaged in construction work for themselves on buildings of limited size and cost. Such exemptions were held to be reasonable and not in violation of the rule of uniformity as to class.

In the case before us the Legislature has broad powers in the regulation and control of the liquor traffic. Allen v. Nebraska Liquor Control Commission, *ante* p. 767, 140 N. W. 2d 413. In regulating and controlling the sale and dispensing of alcoholic liquors it is dealing with a business believed to have a tendency to produce pauperism, vice, misery, and crime. In re Jugenheimer, 81 Neb. 836, 116 N. W. 966, 18 L. R. A. N. S. 386. The right to engage in the sale of intoxicating liquors involves a mere privilege; and restrictive regulations or a suppression of the traffic do not violate provisions of the state and federal Constitutions relating to due process, privileges or immunities, uniformity, nor, unless wholly arbitrary in their discrimination between persons, the

equal protection of the law. Marsh & Marsh, Inc. v. Carmichael, 136 Neb. 797, 287 N. W. 616.

The primary issue is whether or not justification exists for exempting hotels with more than 25 sleeping rooms from the limitation of two licenses per person, contained in the act. The hotel is associated with the traveling public seeking a place where it might find lodging, food, and refreshment. The sale of alcoholic beverages is traditionally a part of the hotel business. The cocktail, the drink during the meal, the after-dinner drink, and the nightcap in the room are matters which the Legislature may consider, none of which are ordinarily associated with the chain-store operator. The chain-store operator with his ability to purchase in quantity and undersell the individual small liquor store retail operator can well produce conditions against the public interest in his competition with the small-store operator. Protection of the small package liquor licensee against the competition of multiple licensed operators is in the public interest. It is the province of the Legislature in mitigating the evils of competition between small retail operators and chain stores to so regulate in the public interest. The uncontrolled tendency toward monopoly, or at least the tendency to concentrate liquor licenses in the hands of a few, is a proper subject of legislation. The hotel has such differences in the operation of its business from that of the chain store that the basis exists for its exclusion from the limitation of two licenses per person. The exemption of present holders of multiple licenses from the limitation of the number of licenses in the hands of a single entity is also a reasonable one which the Legislature in its wisdom may grant or refuse. The applicable rule is stated in State ex rel. Meyer v. Knutson, *supra.*

In a similar case the court in Grand Union Co. v. Sills, 43 N. J. 390, 204 A. 2d 853, said: "The main point relied upon by the appellants in their brief on appeal is that 'the two license limitation does not bear a reasonable

relationship to any public purpose and denies due process and equal protection of the law.' The public purpose was to curb relationships and practices calculated to stimulate sales and impair the State's policy favoring trade stability and the promotion of temperance; and while some may consider other regulatory courses to be preferable, we cannot say that the course chosen by the Legislature and pursued in Chapter 152 is entirely without rational basis. * * * Nor do we find any infringement of the constitutional guarantees of due process and equal protection. * * * The Legislature may, without at all infringing upon the due process clause, either terminate or severely regulate all liquor sales within the State. * * * So long as the regulations contain no irrational classifications or invidious discriminations, they will not conflict with the equal protection clause."

We necessarily conclude that the exemption of hotels having more than 25 sleeping rooms from section 2 of the act, now section 53-124.03, R. S. Supp., 1963, is justified on a reasonable basis and it cannot have the effect of nullifying L.B. 105. Nor is the statute unconstitutional in limiting any one person or entity to two licenses.

It is contended that section 2 of L.B. 105 is unconstitutional in limiting hotels with no more than 25 rooms to two licenses while hotels with more than 25 rooms are exempted from the two license limitation. There is authority that Safeway Stores, Inc., is in no position to raise this issue in that the asserted discrimination affects only hotels with 25 sleeping rooms or less. Griffin v. Gass, 133 Neb. 56, 274 N. W. 193. The persons injured, if any, are the small hotels discriminated against. Grand Union Co. v. Sills, *supra*. But in any event, the exclusion is a reasonable one which the Legislature could properly grant in prescribing the scope of an act regulating and controlling alcoholic liquors. The exemption on the basis of the size of the hotel is no different in principle than the exemption of an architect from a

licensing statute when engaged in construction for himself of a building of limited size and cost.

In the State of Washington the question arose as to whether or not an act excluding short-order restaurants from eligibility for a liquor license was discriminatory when all other restaurants were eligible. The court said: "The appellants claim that initiative 171 discriminates in favor of the operator of a restaurant as that term is defined and limited therein, in that the operator of what is referred to as a 'short order' restaurant is not eligible to secure a class H license. Again bearing in mind the plenary power of the state over the dispensing of intociating liquor and its authority to make such classifications as it deems proper as to the places where such intoxicating liquors may be dispensed and consumed, we are of the opinion that the distinction made in the definition of the term 'restaurant' is one the lawmakers might lawfully draw. If the citation of adjudicated authority is deemed necessary, we refer to Guillara v. Liquor Control Comm., 121 Conn. 441, 185 Atl. 398, 105 A. L. R. 563; Berger v. Quinn, 149 Misc. 545, 268 N. Y. S. 514. The courts in those cases have given what we deem sufficient reasons for classifying those to whom such a license as a class H license should be issued." Randles v. Washington State Liquor Control Board, 33 Wash. 2d 688, 206 P. 2d 1209.

In another similar case the court said: "It will be noted that the section in question, above set forth, expressly excludes hotels from its operation. Appellants claim that such exclusion renders the statute discriminatory and amounts to a denial of the equal protection of the laws, * * *. Every reasonable intendment must be resolved in favor of the validity of the action of the legislature. It must be assumed that as a result of its consideration of the subject matter that body reached the conclusion that the restrictive provisions of section 26c were not necessary or practicable, insofar as hotels

were concerned." Beacon Club v. Kalamazoo County Sheriff, 332 Mich. 412, 52 N. W. 2d 165.

It is urged that section 1 of L.B. 105, now section 53-124.02, R. S. Supp., 1963, is not an attempt to limit the number of liquor licenses one person may hold, but rather an attempt to limit the number of additional licenses one person may acquire after the passage of the act. The act provides that no person, except as provided in the act, shall acquire an interest in more than a total of two alcoholic beverage retail licenses. The language is plain in indicating the legislative intent to limit the number of licenses to two, except that holders of multiple licenses at the time of the adoption of L.B. 105 will not be required to divest themselves of such licenses. This same question was before the Supreme Court of New Jersey on an act which appears to have been the source of the Nebraska law. That court said: "We are satisfied that the statute may not properly be stricken on the ground of vagueness; on the contrary, the legislative language may, within settled principles of statutory construction, readily be interpreted to effectuate the basic goal of the Legislature as it clearly appears from the history and context of the legislation. * * * There must be sensible rather than literal interpretation. * * * Notwithstanding its somewhat awkward terminology, section 1 is to be read as limiting the holding of retail liquor licenses to two per person, without, however, disturbing existing multiple holdings and their renewal." Grand Union Co. v. Sills, *supra.*

Section 5 of the act, now section 53-124.06, R. S. Supp., 1963, deals with the rights of persons having a beneficial interest in a liquor license to hold or acquire shares of stock in a corporation which are traded on a national security exchange or regularly traded in an over-the-counter market by a national securities association. The trial court held section 5 to be unconstitutional as being vague, indefinite, and uncertain. It also found that section 5 was not an inducement to the passage of the act and

that the valid portions of the act remained as enforcible legislation. Safeway Stores, Inc., contends that the declaration of unconstitutionality of section 5 has the effect of invalidating the whole of L.B. 105.

A mere reading of section 5 shows that it is vague, indefinite, and uncertain. L.B. 105 provides penalties for its violation, including section 5. The meaning of this section leaves one in complete darkness as to what constitutes a criminal violation of the act. The result is controlled by our holding in State v. Nelson, 168 Neb. 394, 95 N. W. 2d 678, wherein we said: "A legislative act which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

It is contended by Safeway Stores, Inc., that the declaration of invalidity of section 5 has the effect of invalidating the whole act. The rule in such cases is: Where it appears that unconstitutional portions of an act can be separated from the valid portions and the latter enforced independent of the former, and it further appears that the invalid portions did not constitute such an inducement to the passage of the valid parts that they would not have been passed without them, the former may be rejected and the latter upheld. State ex rel. Wheeler v. Stuht, 52 Neb. 209, 71 N. W. 941; State ex rel. Martin v. Howard, 96 Neb. 278, 147 N. W. 689; Laverty v. Cochran, 132 Neb. 118, 271 N. W. 354. In Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729, this court said: "In our opinion, a workable plan remains after the invalid portions are stricken out. An invalid proviso relating to the licensing of the sale of new motor vehicles has been herein nullified. Also, one cause for the denial of an application for a license or the revocation of an existing license, as the case may be, has been invalidated. Can it be said that these two sections of the act were such an inducement to its passage that it would not have been enacted if they had not been included?

We think not." See, also, Lennox v. Housing Authority of City of Omaha, 137 Neb. 582, 290 N. W. 451.

Admittedly, if the portion stricken was such a major part of the act that it was one of the inducements to its passage, the whole act must fall. The question is, then, was section 5 of such importance that it materially contributed to the passage of the act?

The purpose of the act before us, as shown by the title to the act, was to limit the number of alcoholic beverage retail licenses in which any person may be beneficially interested, to provide exemptions, to make certain acts unlawful, and to provide penalties. Section 5 of the act was in fact only incidental to the main purpose of the act. It is not clear to us how a limitation of a two percent interest in any corporation whose shares are traded on a national securities exchange or regularly traded in an over-the-counter market of a national securities association could be germane to the act. If the limitation applied to the stock of manufacturers, wholesalers, distributors, or retailers of alcoholic liquors only, reason might well exist to sustain the validity of the provision, but a limitation on stock of any corporation bears no reasonable relation to the purposes of the act. The striking down of section 5 leaves a working plan in existence by which the purposes of the act can be enforced independent of such section. Whether or not invalid portions of an act were an inducement to its passage is to be determined from the four corners of the act. It seems to us that section 5 was not an inducement to the passage of the act and that the latter would have been enacted into law irrespective of its presence therein. The remaining parts of the act are enforcible irrespective of the invalidity of section 5.

L.B. 105 contains no severability clause. It is contended that without such a clause the court may not separate the valid from the invalid and sustain the valid and reject the invalid parts. The issue was passed on in Hubbell Bank v. Bryan, 124 Neb. 51, 245 N. W. 20,

as follows: "Since the legislature expressed itself both ways upon the matter of legislative intention and of inducement, in contradictory language, it would seem to amount to the same thing as an absence of a clear-cut expression of intent. In such a case, it would seem necessary to arrive at the legislative intent without reference to such expression. Such a provision 'is an aid merely; not an inexorable command,' said Mr. Justice Brandeis in Dorchy v. Kansas, 264 U. S. 286. See, also, Nixon v. Allen, 150 Ark. 244; State v. Montgomery, 177 Ala. 212. The provision in this statute is novel and is apparently original with our legislature. The only cases reported which we have found are concerned with the provisions that various parts shall be separable. We adopt the rule that a provision expressing legislative intent as to the separability of the various parts of a statute is an aid merely to judicial interpretation." We conclude that a severability clause is not a condition precedent to a determination of the question of severability; that a severability clause in a statute is an aid merely to judicial interpretation.

We have examined the remaining assignments of error and determine that they cannot be sustained. The judgment of the trial court is correct and it is affirmed.

AFFIRMED.