TOM AND JERRY, INC., A CORPORATION, ET AL., APPELLANTS,
v. NEBRASKA LIQUOR CONTROL COMMISSION ET AL.,
APPELLEES.

160 N. W. 2d 232

Filed July 19, 1968.    No. 36923.

Seymour L. Smith, for appellants.

Clarence A. H. Meyer, Attorney General, and Robert R. Camp, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, McCOWN, and NEWTON, JJ., and KOKJER, District Judge.

CARTER, J.

This is a suit for an injunction brought by Tom and Jerry, Inc., and others, against the Nebraska Liquor Control Commission and its members and secretary, to enjoin the enforcement of L.B. 330, now section 53-168, R. S. Supp., 1967, enacted by the 1967 session of the Legislature, for the reason that said act is violative of specified provisions of the Constitutions of Nebraska and of the United States. The trial court found the act to be constitutional with one exception not an inducement to its passage, and entered its judgment accordingly. The plaintiffs have appealed.

The act existing prior to the enactment of section 53-168, R. S. Supp., 1967, permitted the purchase of beer by a retailer licensed to sell it on credit for a period of 30 days and provided a penalty if it was not paid for within 30 days from the date of delivery. § 53-168, R. R. S. 1943. Section 53-168, R. S. Supp., 1967, effective October 23, 1967, provides that the purchase of beer by a licensed retailer must be paid for in cash on delivery and imposes a penalty on a licensed beer retailer not complying with the provision. It is this provision in the new act, among others, which is alleged to be unconstitutional by the plaintiffs.

Plaintiffs contend that the act is violative of Article I, section 25; Article III, section 18; and Article III, section 14, Constitution of Nebraska, and section 1 of the Fourteenth Amendment and the due process clause of the Fifth Amendment to the Constitution of the United States.

Plaintiffs assert that the new act, in prohibiting a re-

tailer from accepting credit for the purchase of beer from a wholesaler and permitting a 30-day credit on a retailer's purchases of other alcoholic liquors, violates the due process and equal protection clauses of the state and federal Constitutions and is discriminatory between the holders of retail licenses dealing in beer and those dealing in other liquors. As a corollary to these questions, it is also asserted that there is an unreasonable classification between beer and liquor licensees which is inhibited by constitutional provisions.

The Legislature has broad powers in the regulation and control of the liquor traffic. The control of the licensed liquor business is different than the ordinary exercise of the police power of an unlicensed business for the protection of the health, safety, morals, and welfare of the public. The engaging in the sale of intoxicating liquors is a mere privilege; and restrictive regulations or even a suppression of the traffic does not violate provisions of the state and federal Constitutions relating to the due process, privileges or immunities, uniformity, nor, unless wholly arbitrary in their discriminations between persons, the equal protection of the law. But even so, justification for classification must exist; purely arbitrary treatment cannot be sustained. Safeway Stores, Inc. v. Nebraska Liquor Control Commission, 179 Neb. 817, 140 N. W. 2d 668; Marsh & Marsh, Inc. v. Carmichael, 136 Neb. 797, 287 N. W. 616.

The very issues before this court were decided in Weisberg v. Taylor, 409 Ill. 384, 100 N. E. 2d 748. In that case, the court said: "Our first inquiry, therefore, is whether or not the imposition of credit restrictions has any relationship to the public health, safety, or welfare within the police powers of the State. The mere statement of the proposition that the extension of credit by a creditor to a debtor does impose on the debtor an interest, supervision, power and influence on the part of the creditor proves itself. Indeed, this has been judicially recognized in Sullivan v. Cann's Cabins, 309

Mass. 519, 36 N. E. 2d 371, 136 A. L. R. 1236, where the
Massachusetts court stated: 'Its purpose appears to have
been to avoid the evils believed to result from the con-
trol of retail liquor dealers by manufacturers, whole-
salers, or importers through the power of credit. Those
evils do not, as a rule, depend upon the nature of the
consideration out of which the credit arose. They depend
upon the power of the creditor over the debtor.' * * * The
restriction or curbing of credit by legislative enactment
is but a logical extension of these prohibitions and is di-
rectly connected with the evils long recognized in the
'tied house.' * * * Credit restrictions on a nationwide
basis are inaugurated on the theory that they will ulti-
mately reduce sales and the consumption of goods. If
the legislature, therefore, believes that the restrictions
here imposed will reduce the volume of sales and tend
to promote temperance rather than intemperance, then
we cannot say as a matter of law that such a conclusion
has no connection with the public welfare, safety, or
morals, even though we may doubt that it will accom-
plish in full such result. * * *

"Our next question is whether or not the no-credit
provision with respect to beer and the fifteen-day credit
limitation on distributors of beer discriminates between
such dealers as compared with distributors and retail
dealers of other alcoholic beverages. * * * Historically,
therefore, there is a sound basis for distinguishing be-
tween beer and other alcoholic beverages. The volume
of any single brand or product of any single distillery of
whiskey, or wine, or spirits, used in a single tavern is
hardly sufficient to interest the distillery in the active
control and management of that establishment. Most of
such products are shipped from a distance. Beer, on
the contrary, is more localized than are other alcoholic
beverages. The interest of the brewery in acquiring
trade in its local area is considerably more self-evident.
There is, however, we believe, historically and other-
wise, a sound basis for the distinction and classification

here made by the legislature. We cannot say that, in drawing that distinction and imposing the credit restriction, the legislature has acted in an arbitrary or discriminatory manner in seeking to avoid a recurrence of the evil which was historically known to them. * * *

"We have already observed that the right to sell liquors is permissive only and the regulations may be much more stringent than those permitted in other businesses. We cannot here say that the means employed in this act by the legislature to secure obedience to the credit provisions of the act are unreasonable, discriminatory, or lack the necessary relation to the police power of the State. The act operates equally and impartially upon manufacturers, upon importing distributors, upon distributors, and upon retailers. It likewise operates equally and impartially upon the distributors of beer and upon the retailers of beer. The legislature may well say that we do not want anyone engaged in the retail sale of beer who has to depend upon credit for the operation of his business. * * * It, therefore, appears that the statute here complained of is not in violation of any of the constitutional provisions as here asserted."

The primary question in this case is whether or not the act discriminates between retailers of beer and retailers of other liquors which depends largely on the question whether or not the placing of retailers of beer in one class and retailers of whiskey, wine, and other spirits in another, are reasonable classifications for purposes of legislation. The record in this case discloses that liquors other than beer can be stocked by a retailer in larger quantities, that the stock turnover is not so frequent, and that the source of the stock supply is usually more distant and deliveries less frequent than beer. The evidence shows that beer, because of its nature, is more localized and requires deliveries to be made once or twice a week. The evidence also shows that the distribution of beer on the 30-day credit basis has created administrative problems. It is shown that the month preceding

the date of passage of the new act there were 163 violations of the credit provisions of the act and the Liquor Control Commission was required to inflict penalties on 44 retail licensees for failure to comply with the credit requirements of the controlling statute. In addition thereto, it is within the province of the Legislature to determine that it does not want anyone engaged in the retail sale of beer who has to depend upon credit for the operation of his business. There are differences in the business of retailing beer and in retailing other forms of alcoholic liquors that sustain their being differently classified for purposes of legislation.

Plaintiffs offered evidence to show that the payment for beer on a cash basis on delivery resulted in financial loss. They said that it requires more frequent deliveries, more trucks, and more employees. They said that they lose the use of their money for the credit period. They further say that cash on delivery has resulted both in the loss of customers and volume. But these alleged losses are incident to the regulation of the licensed business of selling beer that operate on all retailers of beer alike. It can afford no basis for constitutional objection.

In Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289, this court said: "We think the rule is, that a citizen has no vested right in statutory licenses, permits and privileges. This being true, a license to carry on a particular trade may be recalled by legislative action at any time. No one has a vested right to be protected against consequential injuries arising from a proper exercise of public powers. That the state under its police power may regulate the use of motor vehicles on the public highways cannot be questioned. Consequently, any incidental damage resulting from a legislative invocation of its police power does not give rise to a right to enjoin the act or to claim compensation from the public. And, likewise, the amendment or repeal of an existing police regulation must necessarily follow the same principle."

The general rule as to classification for purposes of

legislation is: "While it is competent for the Legislature to classify for purposes of legislation, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstance, that would naturally suggest the, justice or expediency of diverse legislation with respect to the objects to be classified." Safeway Stores, Inc. v. Nebraska Liquor Control Commission, *supra*. We think the classifications were reasonable, operating on all licensed retailers of beer alike, and within constitutional requirements.

We hold under the authorities cited that section 53-168, R. S. Supp., 1967, is not violative of the equal protection, due process, privileges and immunities, nor the antidiscrimination clauses of the state and federal Constitutions, except as to one exception hereafter noted.

The exception mentioned in the previous paragraph refers to the claim that the following provision of subsection (1) of section 53-168, R. S. Supp., 1967, is unconstitutional: "* * * except the provisions of this section shall not apply to manufacturers, distributors, and licensees of beer when sold in stadiums where professional baseball is played," and that such unconstitutionality has the effect of invalidating the whole of section 53-168, R. S. Supp., 1967. The provision shows on its face that it is discriminatory and unconstitutional. This exception was in the old section, section 53-168, R. R. S. 1943, having been placed therein in 1953. It is clear, therefore, that it was not an inducement to the passage of the new act in 1967. In giving consideration to the new act and the purposes intended, we do not think it would have been an inducement to the passage of the new act even if it had originated therein.

The applicable rule is: "Where it appears that unconstitutional portions of an act can be separated from the valid portions and the latter enforced independent of the former, and it further appears that the invalid portions did not constitute such an inducement to the pas-

sage of the valid parts that they would not have been passed without them, the former may be rejected and the latter upheld." Safeway Stores, Inc. v. Nebraska Liquor Control Commission, *supra*.

There was no severability clause in the act before us. But a severability clause is merely an aid to construction and not an inexorable command. A severability clause in a statute is not a condition precedent to a determination of the question of severability. Hubbell Bank v. Bryan, 124 Neb. 51, 245 N. W. 20, 289 U. S. 753, 53 S. Ct. 785, 77 L. Ed. 1498; Safeway Stores, Inc. v. Nebraska Liquor Control Commission, *supra*.

It is alleged that the title to the act before us is insufficient and violative of Article III, section 14, Constitution of Nebraska. The title to the act is: "An Act to amend section 53-168, Reissue Revised Statutes of Nebraska, 1943, relating to alcoholic liquors; to make it unlawful for a person having a retailer's license to sell beer to accept credit for the purchase of beer from any manufacturer, distributor, or wholesaler of beer; and to repeal the original section." The title clearly states the amendment made to section 53-168, R. R. S. 1943. Plaintiffs urge, however, that the title to the present act should also have referred to the provisions of the act being amended. This question appears to have been decided in Miller v. Iowa-Nebraska Light & Power Co., 129 Neb. 757, 262 N. W. 855, wherein it is stated: " 'Where the title of an amendatory or supplemental act sufficiently indicates the nature of the legislation in it contained, or the nature of the changes or additions by it made, it is immaterial whether or not the provisions of the act are covered by the title of the act amended or supplemented.' " The title to the act meets the requirements of the constitutional provision providing that: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." Art. III, § 14, Constitution of Nebraska.

Some contention is made that the act is ambiguous,

contradictory, and unintelligible. In construing a legislative act, the provisions should be construed together and harmonized if possible. The intent of the Legislature in passing the act is plain and clear. When the intent of the Legislature is clear, it is the duty of the courts to construe it in accordance with such intent. A sensible construction will be placed upon it to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. In Safeway Stores, Inc. v. Nebraska Liquor Control Commission, *supra,* we quoted the following with approval from Grand Union Co. v. Sills, 43 N. J. 390, 204 A. 2d 853: " 'We are satisfied that the statute may not properly be stricken on the ground of vagueness; on the contrary, the legislative language may, within settled principles of statutory construction, readily be interpreted to effectuate the basic goal of the Legislature as it clearly appears from the history and context of the legislation. * * * There must be sensible rather than literal interpretation. * * * Notwithstanding its somewhat awkward terminology, section 1 is to be read as limiting the holding of retail liquor licenses to two per person, * * *.' "

"A primary rule of construction is that the intention of the Legislature is to be found in the ordinary meaning of the words of a statute in the connection in which they are used and in the light of the mischief to be remedied. While there is a rule requiring the strict construction of a penal statute that rule is not violated by giving to the words their full meaning in connection in which they are employed." State v. Buttner, 180 Neb. 529, 143 N. W. 2d 907.

"The legislative intent, when apparent from the whole statute, is not to be thwarted by strained and unusual interpretations of particular words not required under the circumstances, nor because the statute previously was different in detail, or that a subsequent amendment has changed it in some respects. We think when given

its usual accepted meaning, the language of the statute and the intent of the Legislature are clear." Schmeckpeper v. Panhandle Coop. Assn., 180 Neb. 352, 143 N. W. 2d 113.

We conclude that the statute is not defective for ambiguity or indefiniteness, and that it is not in violation of the constitutional provisions here asserted, except as to the one provision set out herein. The trial court came to the same conclusion and its judgment is therefore affirmed.

AFFIRMED.