REQUESTED BY: Senator Vard Johnson Member of the Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator Johnson:
You have asked us to examine the latest amendments to LB 284, and to give our opinion as to the distribution system it sets up for fiscal years 1980-1981 and 1981-1982, and also the system set up for 1982-1983 and subsequent fiscal years.
Sections 1 through 5 of the bill, as amended on April 27, provide for distribution of seventy million dollars in 1980-1981 and the same sum in 1981-1982. The basis of distribution is basically the same as that which we discussed in our Opinion No. 62, issued April 1, 1981, the only apparent difference being that in the version discussed in that opinion, the distribution for 1980-1981 was to be $72,500,000, instead of $70,000,000. In that opinion we said that there were numerous difficult questions raised by the sections in question, and that we could not predict with any assurance what the court would say when confronted by them, but that if one defect was corrected (which has been corrected in the present version) we would attempt to defend the validity of the first five sections of the bill. We have no reason to change our position in this regard.
Sections 7 through 11 of the amended bill provide for distributions to the state's political subdivisions for fiscal year 1982-1983 and following years. The basis of the distribution to the counties is the actual valuation of real and personal property in the counties, each county to get a percentage of the fund to be distributed equal to its percentage of all such real and personal property in the state. It is substantially identical to the system for distribution we discussed in our Opinion No. 78, issued April 14, 1981. In that opinion we reached the conclusion that assessed valuations, divorced from population, did not form a rational basis for the distribution of state aid. We are still of that opinion.
Section 13 of the bill is a severability clause. We believe that there is not so much correlation between sections 1 to 5 and sections 7 to 11 that the invalidity of one of those two portions of the bill would necessarily invalidate the other, in view of section 13. However, our court has said that a severability clause is merely an aid to interpretation, and not an inexorable command. See, Tomand Jerry, Inc. v. Nebraska Liquor Control Commission,183 Neb. 410, 160 N.W.2d 232 (1968), and State ex rel. Meyer v.Duxbury, 183 Neb. 302, 160 N.W.2d 88 (1968). In spite of that clause, the court will examine the whole act, and its history, to see if the invalid parts could be eliminated without destroying the entire plan of the act, and whether the invalid parts constituted such an inducement to the passage of the act that the Legislature would not have passed it with the invalid portions omitted. In this instance, however, we believe the act is severable.
You express your concern about the possibility of some taxpayer's filing a suit challenging the act, and getting a temporary injunction against the distribution of the fund, or, in the alternative, ultimately prevailing and forcing a return to the state treasury of funds distributed under the bill.
Both of those are possibilities. If a private citizen brought the action, we suppose a court would require, before issuing a temporary injunction, that he post a bond, as required by Neb.Rev.Stat. § 25-1067 (Reissue 1979). In view of the amount of money involved, we suppose the bond would be too large for any private citizen to post. However, we call your attention to Neb.Rev.Stat. § 14-817 (Reissue 1977), which provides that a city of the metropolitan class is not required to post bonds. Conceivably, an action could be brought in the name of the City of Omaha and a temporary injunction could be issued without a bond's being posted.
You also ask about what would happen if money were distributed under a formula subsequently found to be unconstitutional. It would be difficult to argue that the money so disbursed should not be returned to the state treasury.
If the formula is unconstitutional, the money will have been wrongfully disbursed, and, it would appear, should be returned.
In State ex rel. Douglas v. Marsh, 207 Neb. 598 (1980), the court granted a temporary restraining order, and in that order stated that if the funds were distributed, and if the distribution were later found to be unconstitutional, the funds distributed would be required to be refunded.
We cannot give you a definite answer at this time as to the exact procedure that would be used to secure the refunds. Pretty clearly the court could not order each political subdivision in the state to repay the funds, because such subdivisions would not be parties to the action. The court might order the treasurer to withhold sums otherwise distributable to them until the refunds had been accomplished.
We believe there is no statute covering this exact situation, nor any precedent, in this state, at least, but the court, in the exercise of its equity powers, could order the refunds to be accomplished, in some manner, including, if necessary, suits against the individual political subdivisions.
An attack on LB 284 would probably be brought in district court, as factual findings might be necessary. If so, we would be fortunate to have the case decided by the district court and the appeal perfected to the Supreme Court in much less than a year. Then, assuming that the Supreme Court would give the case top priority, it would take at least six months to get a decision out of the Supreme Court. It would be unrealistic to expect a final decision before very late in 1982, unless the courts and opposing counsel were very cooperative and gave the case very high priority.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General